UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:21-CR-13-GFVT-HAI-2 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| LORI BARNETT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Defendant Lori Barnett has moved to suppress evidence recovered from her iPhone and Apple MacBook Pro laptop, both of which were seized from her when a search warrant was executed at her residence. The Court finds that both items were properly seized pursuant to the search warrant issued in Tennessee to search her residence. Under these circumstances, suppression is not provided as a remedy for any subsequent delays in searching, processing, and returning these items. The undersigned recommends that the motion (D.E. 263) be denied.

This case involves the multi-year investigation of a multi-site pain clinic (Express Health Care, or "EHC") on suspicions of pain-pill diversion and accompanying fraud. This is one of numerous defensive motions filed by the medical-provider defendants in this matter.

Barnett, who was a registered nurse at EHC, filed her motion to suppress with accompanying exhibits on June 7, 2022. D.E. 263. The government responded in opposition, attaching additional exhibits. D.E. 301. On July 26, Barnett replied. D.E. 330. The motion was also discussed during an August 10 teleconference. D.E. 358. Because no material facts are in dispute, the undersigned declines to conduct an evidentiary hearing. This matter turns on the

1

interpretation of the facts and an analysis of the residential search warrant.[1]

## I. Background

On December 12, 2018, Honorable Bruce Guyton, Magistrate Judge in the Eastern District of Tennessee, Knoxville, authorized a warrant to search the residence occupied by Defendants Robert Taylor and Lori Barnett. The warrant, in East Tennessee case # 3:18-MJ-2204-HBG, is filed at Docket Entry 301-1.

Attachment F of the residential warrant lists the "things to be seized" from the residence, followed by a "procedure for search of computer data." D.E. 301-1 at 4-6. The warrant authorized agents to seize "items [that] constitute evidence, fruits, and/or instrumentalities of violations of 21 U.S.C. §§ 846 and 841, and 18 U.S.C. §§ 1035 and 1347." D.E. 301 at 4. Examples of such evidence fruits, and instrumentalities include "[a] computer (laptop, desktop, or tablet) being used for EHC business activities" and "[a]ny records or documents referring to EHC or an EHC patient." *Id*. Attachment F includes additional examples of such evidence, fruits, and instrumentalities, such as "[a]ssets purchased with EHC income" and

> Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes and documents, and other items which reflect names, addresses, telephone numbers, and communications regarding the diversion of controlled substances or defrauding a health care benefit program by Robert Taylor and other practitioners, employees, or contractors at EHC locations in Jacksboro, TN or Harriman, TN.

*Id*.

Agents "extensively interviewed" Taylor and Barnett during the December 13, 2018 search-warrant execution. D.E. 263 at 2.[2] After these interviews, DEA Special Agent Jared

---

[1] In her reply brief, Barnett provides a list of disputed factual issues to be explored at a hearing. D.E. 330 at 10-11. But none of these presents a dispute of fact necessary to resolve and decide the motion.

[2] The December 13, 2018 interview itself was suppressed under *Miranda*. D.E. 236. Currently pending is a motion from Barnett to suppress the *fruits* of that interview on the basis the statements were not voluntary. D.E. 266. This

2

Sullivan seized Barnett's Mac Book Pro laptop and her cellphone. *Id*. The motion quotes Agent Sullivan's report: "Because both BARNETT and TAYLOR, during their interviews, referenced using their cellular telephones to conduct EHC business, SA Sullivan decided to seize both phones with the intent to then seek a warrant to search the phones." *Id*. (quoting D.E. 263-2 at 7). Barnett maintains that she "never consented to the seizure of her cell phone (or laptop)" and "refused to give the agents her password to her cell phone despite being asked multiple times." *Id*. at 3. She also "immediately sought the return of her cell phone and laptop" and followed up with written requests in January and March 2019. *Id*. None of these facts are disputed.

According to the motion, "On April 24, 2019, four months after the devices had been seized, S.A. Sullivan finally filed (and obtained) an application for a search warrant for Ms. Barnett's laptop and cell phone." D.E. 263 at 3. These warrants were authorized by the undersigned in matters 6:19-MJ-6026-HAI (D.E. 263-1) and 6:19-MJ-6029-HAI (D.E. 263-5). Barnett continues, "Her laptop was not returned until almost a year later on February 25, 2020. Her cell phone was finally returned to her in December 2020—despite the data from her phone having been extracted, processed, and saved to a USB drive eighteen (18) months earlier on June 11-12, 2019." *Id*. None of these facts are disputed.

## II. The Briefing

Barnett argues the seizure of her cellphone and laptop violated the Fourth Amendment due to the delays in having the phone searched, copied, and returned to her. D.E. 263 at 3-4. She argues the process unreasonably infringed her possessory interests in the phone. *Id*. Even if the initial seizure was supported by probable cause, she argues that the unreasonable delay converted

---

Recommendation does not address the potential effect, if any, of that other motion upon the admissibility of the contents of the iPhone and laptop. Another motion (D.E. 264) attacks directly the warrant to search the residence of Taylor and Barnett, and this Recommendation does not take into account any potential effect of that motion.

Case: 6:21-cr-00013-GFVT-HAI   Doc #: 384   Filed: 09/08/22   Page: 4 of 12 - Page
                                      ID#: 4732

it into an unreasonable seizure warranting suppression of the evidence. *Id*. The motion cites case law in support of the proposition that after seizing an item, the government must obtain and execute a warrant within a reasonable period of time. *Id*. at 4-5. Barnett cites cases wherein delays much shorter than the four-month delay here were found unreasonable. *Id*. at 8.

The government's response spotlights the key weakness in Barnett's motion. D.E. 330. Barnett indeed provides case law establishing that, after seizing an electronic device, the government must promptly obtain a warrant to search it. But the problem with Barnett's case is that the seizure of her cellphone and laptop was *already* authorized by a search warrant *before the items were seized*. The seizure was authorized under Judge Guyton's December 12, 2018 warrant for the search of the residence. The contested seizure was not a warrantless "probable cause" seizure at all. According to the government, in each of the cases Barnett cites, "the initial seizure was warrantless." D.E. 301 at 2. And Barnett "cites no case where a court found a Fourth Amendment violation based on the elapsed time between a warrant-authorized seizure and a subsequent warrant-authorized search." *Id*.

In her reply, Barnett appears to concede that the laptop's seizure was covered by the residential search warrant but insists the warrant did not encompass her iPhone. D.E. 330 at 1. She argues that although the warrant authorized seizure of a "computer (laptop, desktop, or tablet) being used for EHC business activities," the warrant "did not include any cell phones." *Id*.

### III. The Devices Were Seized Under the Residential Warrant

The Court finds that the residential search warrant authorized seizure of devices such as Barnett's cellphone and laptop that could contain evidence of the suspected crimes or records of EHC. Barnett's reply focuses mostly on the iPhone as being outside the scope of the residential warrant. And for good reason. Attachment F specifically names a "laptop" computer as among

the "evidence, fruits, and/or instrumentalities" to be seized during the search. D.E. 301-1 at 4. Thus, the seizure of her laptop was clearly authorized by the warrant. The Court therefore proceeds to analyze solely the seizure of the iPhone.

There are several reasons why Barnett's phone also fits within the seizure authorized by the warrant.

### A. The cellphone was an instrumentality of the suspected crimes

First, the phone was an instrumentality of the suspected crimes. The opening sentence of Attachment F states that the "[t]hings to be seized" from Barnett's residence were "evidence, fruits, and/or instrumentalities of violations of [the suspected drug and fraud crimes]." D.E. 301-1 at 4. An "instrumentality, per Black's is "[a] thing used to achieve an end or purpose." INSTRUMENTALITY, Black's Law Dictionary (11th ed. 2019).

Agent Sullivan had a warrant to seize instrumentalities of drug trafficking and fraud associated with EHC. Barnett told Sullivan she had used her cellphone "to conduct EHC business." D.E. 263 at 2. She stated she used her email account "for EHC purposes and said she uses . . . her phone to access the email account." D.E. 263-5 at 16. She added that she "sends EHC-related text messages from her phone regarding more urgent matters." *Id*. at 18. Taylor also said that he would scan documents and email them for EHC purposes and added that "Lori had a scanner on her phone." *Id*. at 17.

These statements gave Sullivan reason to believe Barnett's cellphone was an instrumentality, a thing used to achieve the end or purpose of EHC business (which business was suspected to include drug trafficking and fraud) and that evidence of the crimes may exist on the phone. This authorization alone—to seize "instrumentalities" of EHC's suspected drug trafficking and fraud—placed Barnett's smartphone within the proper ambit of the residential search warrant.

5

To provide one example from case law, in *Coleman*, the defendant "complain[ed] that officers seized cell phones that were not specifically mentioned in the warrant." *United States v. Coleman*, 909 F.3d 925, 931 (8th Cir. 2018). The Eighth Circuit "agree[d] with the district court that cell phones were within the class of 'instrumentalities of criminal activity' the warrant specifically described." *Id*. The warrant in *Coleman* authorized a search for cocaine, along with "paraphernalia" and "any and all other instrumentalities and money of criminal activity." *United States v. Coleman*, 4:14-CR-249-BSM, D.E. 66 at 13 (E.D. Ark. March 1, 2016). The defendant argued the seizure of his cellphone exceeded the scope of the warrant. *Id*. But the district court noted "it is easy to find that cell phones, particularly in this day and age, fall into the class of "instrumentalities" of criminal activity." *Id*.; *see also United States v. Skinner*, No. 3:19-CR-19, 2021 WL 1725543, at *16 (E.D. Va. Apr. 29, 2021) (observing that cellphones "are an instrumentality of the crime," in a child porn case concerning the validity of warrants issued to search cellphones seized upon the defendant's arrest).

It matters not that Agent Sullivan later obtained a second warrant to search the contents of the phones and laptops themselves. In the Court's experience, it is standard procedure for federal agencies to seize several electronic devices under a residential search warrant, and then apply later for subsequent warrants to authorize the search of the individual devices. This two-warrant process provides greater assurances that searches of electronic devices (which tend to contain much personal information) comply with the Fourth Amendment.

So, the Court finds first that the cellphone and laptop were properly seized as "instrumentalities of [the suspected crimes]." D.E. 301-1 at 4.

### B. The cellphone was a computer

The seizure of both items was also authorized under the first listed example of the

6

"evidence, fruits, and/or instrumentalities" to be seized. Per Attachment F, these items are said to "include[e] . . . A computer (laptop, desktop, or tablet) being used for EHC business activities." D.E. 301-1 at 4. The Court finds that a smartphone such as an iPhone qualifies as a "computer." In fact, both parties cite caselaw for the proposition that smartphones are essentially minicomputers. D.E. 263 at 6; D.E. 301 at 4-5.

"[A] modern cell phone *is* a computer." *United States v. Flores-Lopez*, 670 F.3d 803, 804 (7th Cir. 2012). Modern cellphones are "in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Riley v. California*, 573 U.S. 373, 393 (2014). They have "immense storage capacity," and even the most basic cellphones "might hold photographs, picture messages, text messages, Internet browsing history, a calendar, a thousand-entry phone book, and so on." *Id*. at 394.

The Court does not read this language from Attachment F as limiting the government to seizing only a single computer that must be either a laptop, desktop or tablet. The court interprets "(laptop, desktop, or tablet)" as providing a non-exhaustive list of examples of types of computers. Given that the law recognizes smartphones as types of computers, the seizure of Barnett's phone was authorized as seizure of a "computer . . . used for EHC business activities." D.E. 301-1 at 4. This broad interpretation of "computer" is supported by Attachment F's subsequent "Procedure for Search of Computer Data," more fully explored below, which contemplates seizure and search of computer data from any type of electronic storage device.

### C. The cellphone contained items specified in the warrant

Third, Barnett's iPhone, which she admitted was used to conduct EHC business, would have itself contained other items authorized to be seized under the eighth unnumbered paragraph

7

of Attachment F. That paragraph provides for the seizure of:

> Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes and documents, and other items which reflect names, addresses, telephone numbers, and communications regarding the diversion of controlled substances or defrauding a health care benefit program by Robert Taylor and other practitioners, employees, or contractors at EHC locations in Jacksboro, TN or Harriman, TN;

D.E. 301-1 at 4.

It is common knowledge that people use cellphones to store phone numbers addresses, photographs, letters, personal notes and documents, and various forms of communications, including text messages, chat programs, and emails. *See Riley*, 573 U.S. at 393. Once Barnett told Agent Sullivan she used her phone to email and text for EHC business, it would be reasonable for him to conclude that the phone contained the type of evidence, particularly "communications," described in this paragraph. *See United States v. Flores-Lopez*, 670 F.3d 803, 805–06 (7th Cir. 2012) (describing how cellphones are "containers," but are treated different from traditional containers for Fourth Amendment purposes due to the sheer volume of data cellphones can contain); *see also Riley*, 573 U.S. at 397 (describing how cellphones are a unique sort of container due to their access to cloud storage).

Accordingly, there are three independent reasons why Barnett's iPhone was seizable based solely on the first page of Attachment F.

### D. The warrant's search procedure also indicates the cellphone could be seized

The second and third pages of Attachment F then provide a "Procedure for Search of Computer Data." D.E. 301-1 at 5-6. These pages provide additional insight into the types of items that Judge Guyton authorized to be seized.

First, paragraph 2 explains that agents were authorized to search for records, documents, and materials "created, modified or stored in any form, including, but not limited to, electronic or

computer data." D.E. 301-1 at 5. Clearly, a phone that was used for EHC business would be expected to contain relevant electronic records as described in this paragraph.

Second, paragraphs 2(a) and 2(d) anticipate that agents will seize and make an initial review of any "computer equipment and storage devices." D.E. 301-1 at 5. As noted above, it is common knowledge that smartphones are a type of computer. And smartphones function as storage devices of various types of data and documents.

Third, paragraph 3 of Attachment F states that agents "will need to seize and search the following items," which include:

> a. Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;
>
> b. Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;
>
> c. Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants[.]

D.E. 301-1 at 6. As previously noted, courts recognize smart phones as computers and storage devices. Smartphones are devices "capable of being used to commit, further, or store evidence" of the suspected crimes. They are equipment that can be "used to facilitate the transmission, creation, display, encoding, or storage of data." Smartphones are electronic storage devices capable of storing data. They can be used as electronic notebooks and personal digital assistants.

The "Procedure for Search of Computer Data" section of Attachment F illuminates the meanings of the terms on the first page of Attachment F. If there was any doubt as to whether the first page of Attachment F authorized the seizure of a smartphone that was known to be used to

9

conduct EHC business, then the explanations in the "Procedure for Search" section should squelch any doubt.

Accordingly, the Court finds that Barnett's laptop and iPhone were both properly seized pursuant to the residential warrant. Once Agent Sullivan heard that the laptop and iPhone had been used for conducting EHC business, he knew they were seizable. These devices were instrumentalities of the suspected crimes. They contained potential evidence of the suspected crimes. They are devices capable of storing EHC-related records and documents. They could store seizable information, such as contact information, photos, and various types of communications related to EHC and the suspected crimes.

### IV. No Unreasonable Delay

In her reply, Barnett points to caselaw discussing suppression due to an unreasonable delay in reviewing previously seized evidence. D.E. 330 at 7-10. In terms of the allowable timeframes, here we are in a different universe from cases involving warrantless seizures. To reiterate, Barnett's phone was seized pursuant to the residential warrant. So the only question is whether the government complied with the Fourth Amendment following this warrant-backed seizure.

To review, the laptop and cellphone were seized on December 13, 2018. Warrants to search these devices were obtained on April 24, 2019. The data from the phone was extracted on June 11-12, 2019. The laptop was returned in February 2020, and the cellphone was returned in December 2020. D.E. 263 at 3. The government has provided no explanation for these delays.

A case cited by Barnett explains:

> [U]nder current law there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence seized falls within the scope of a warrant. *See, e.g.,* [*United States v. Mutschelknaus*, 564 F. Supp. 2d 1072, 1076 (D.N.D. 2008), *aff'd*, 592 F.3d 826 (8th Cir. 2010)] ("Neither Fed. R. Crim. P. 41 nor the Fourth Amendment provides for a specific time limit in which a computer may undergo a government forensic

examination after it has been seized pursuant to a search warrant."). However, the Fourth Amendment requires the government to complete its review, *i.e.,* execute the warrant, within a "reasonable" period of time. Numerous cases hold that a delay of several months between the seizure of electronic evidence and the *completion* of the government's review of that evidence as to whether it falls within the scope of the warrant is reasonable. *See id.* at 1076-77 (finding a two-month delay reasonable); *see also Burns,* 2008 WL 4542990, at *8-9 (finding a ten-month delay for *completion* of the government's review reasonable).

*United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012).

As a more recent case observes:

> Courts have previously determined that delays of 10 months, or more, in reviewing electronic data are not *per se* unreasonable, even when the government does not furnish a basis for the delay in searching electronic data. *See, e.g.*, [*United States v. Sosa*, 379 F. Supp. 3d 217, 222 (S.D.N.Y. 2019)] (finding delays of 10 and 15 months were reasonable, even though government furnished no basis for the delay, when search was ultimately completed three months prior to defendant's scheduled trial); *United States v. Burns*, No. 07-CR-556, 2008 WL 4542990, at *9 (N.D. Ill. Apr. 29, 2008) (finding a delay of 10 months in searching computer data was not unreasonable even though it "was certainly lengthy and the government does not give any reason for the delay"); *United States v. Gorrell*, 360 F. Supp. 2d 48, 55 n. 5 (D.D.C. 2004) (finding a delay of ten months in processing computer data to be lengthy, but not so long as to "take the data outside the scope of the warrant such that it needs to be suppressed"). By contrast, the government may not "seize and image electronic data and then retain that data with no plans whatsoever to begin review of that data to determine whether any irrelevant, personal information was improperly seized." *Metter*, 860 F. Supp. 2d at 215.

*United States v. Estime*, No. 19-CR-711-NSR, 2020 WL 6075554, at *14 (S.D.N.Y. Oct. 14, 2020); *see also United States v. Dixon*, No. 3:20-CR-03-TCB-RGV, 2021 WL 2327063, at *6 (N.D. Ga. Apr. 15, 2021) (no suppression for 24-month delay), *report and recommendation adopted*, 2021 WL 1976679 (N.D. Ga. May 18, 2021).

In fact, the "general rule" is that the government "may retain property bearing evidence until after criminal proceedings have terminated." *United States v. Channon*, No. CR 13-966 JCH, 2014 WL 12788057, at *9 (D.N.M. Sept. 22, 2014). *Channon* relies on *Christie*, in which the Court of Appeals noted, "After the government executed its first search warrant and found

11

incriminating evidence, it was presumptively entitled to retain the computer through trial." *United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013). "There is no requirement . . . in the Constitution, that the government return or destroy lawfully obtained evidence relevant to an ongoing criminal investigation while the criminal proceedings related to that investigation remain pending." *United States v. Lee*, No. 1:14-CR-227-TCB-2, 2015 WL 5667102, at *15 (N.D. Ga. Sept. 25, 2015).

These criminal proceedings remain pending, and trial is set for January next year. Given these authorities, the Court finds no basis for suppression under the facts of this case.

### V.  Conclusion

For the reasons discussed above, the undersigned **RECOMMENDS** that Defendant Lori Barnett's motion to suppress (D.E. 263) be **DENIED**. Both items were seized pursuant to the residential search warrant, and case law does not support suppression of warrant-backed seizures based upon the lengths of the delays in this case.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. Any objection must be filed within **fourteen days** of the entry of this order. Failure to object per Rule 59(b) waives a party's right to review. Upon expiration of that fourteen-day period, this matter will be submitted to Judge Van Tatenhove for his consideration.

This the 8th day of September, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge