UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:21-CR-13-GFVT-HAI-1, 2, 3 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| ROBERT TAYLOR, LORI BARNETT, | ) | |
| & EVANN HERRELL, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Three of the defendants have moved to suppress various items, including electronic records on a variety of grounds. The Court finds no hearing is warranted and recommends that the motion be denied.

On June 7, 2022, Defendants Robert Taylor and Lori Barnett jointly moved to suppress "electronic evidence," along with other relief. D.E. 264. On June 20, Defendant Evann Herrell moved to adopt the motion to suppress (D.E. 282), and the Court granted that motion to adopt (D.E. 294). The government filed its response on June 12 (D.E. 305), and Taylor and Barnett replied (D.E. 325). Herrell moved to adopt that reply (D.E. 332), which was granted (D.E. 389). On August 10, 2022, the Court conducted a teleconference to discuss three pending motions to suppress, including this one. D.E. 341 (order); D.E. 358 (minutes).

This case involves the multi-year investigation of a multi-site addiction-treatment clinic (Express Health Care, or "EHC") on suspicions of pain-pill diversion and accompanying fraud. This is one of numerous defensive motions filed by the medical-provider defendants in this matter.

The motion describes itself as follows:

> This motion challenges the government's use of overbroad warrants used to

1

obtain electronically stored information and its use of forensic software and/or case agents to review everything produced in response. This motion also challenges the government's use of warrants to obtain out-of-district electronic communications and to obtain e-mail account content after the government raided EHC and executed a warrant on Dr. Taylor and Ms. Barnett's residence.

D.E. 264 at 1. The motion goes on to say, "To the extent the government also obtained electronic evidence pursuant to court orders or subpoenas, Movants also ask the Court to suppress those materials for having been obtained without a warrant." *Id*. at 2.

Based on these descriptions, the motion appears to make four substantive claims, which will be discussed in the following order:

(1)     Warrants to obtain out-of-district electronic communications were invalid.

(2)     Non-warrant instruments issued to obtain electronic evidence were invalid.

(3)     The government misused forensic software and/or case agents to review the seized electronically stored information.

(4)     Warrants for electronically stored information (including the warrant to search the Taylor-Barnett residence) were lacking in probable cause to support the breadth of the search, meaning that the warrants were overbroad.

The motion further claims that the government failed to produce in discovery all the relevant records. D.E. 264 at 2. However, this issue of inadequate discovery production has been resolved. As memorialized in the minutes of the August 10 teleconference, "The parties now believe that all warrants (and accompanying affidavits) that could be challenged by a pretrial motion to suppress have been provided by the government. There is no longer any dispute that all currently discoverable investigatory instruments have been supplied to the defense." D.E. 358. Thus, these Defendants possessed all of the instruments to potentially challenge prior to filing the motion and any lingering request to supplement the motion (or file another one) is denied.

According to the defense, their original discovery request was sent in April 2021.  Since then not a single discovery dispute concerning these materials was presented to the Court.

Defendants' motion is broad, complicated, and at times difficult to decipher.  Many of the claims appear to have been raised purely to preserve arguments on appeal.  In this Recommended Disposition, the Court may not address every specific argument in Defendants' convoluted motion. This is because issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

To gain clarity, the Court asked Defendants at the August 10 teleconference (D.E. 358) to lay out exactly which issues needed a ruling from the Court given that the suppression motion was fully briefed.  As memorialized in the audio recording of the teleconference, Mr. Davies (counsel for Defendant Taylor) explained they were challenging about thirteen warrants in all.  He clarified that the three following issues remain live controversies for resolution:

First, Defendants challenge the warrants to search the Taylor/Barnett residence and the Herrell residence, issued on December 12, 2018, by Magistrate Judge Bruce Guyton in the Eastern District of Tennessee.  Mr. Davies explained on the call that this challenge is directed solely to the seizure of electronic evidence under these warrants.[1]  The residential warrants currently being challenged are:

- #3:18-MJ-2204-HBG, for the Taylor/Barnett residence, filed at Docket Entry 264-1, with the affidavit at 264-2.

- #3:18-MJ-2205-HBG, for the Herrell residence, filed at Docket Entry 282-1, which

---

[1] A different motion by Defendant Barnett challenged the seizure of her iPhone and MacBook Pro Laptop as being outside the scope of the residential search warrant.  This motion is discussed in the undersigned's Recommended Disposition at Docket Entry 384.

3

Herrell states relies on the same affidavit as the warrant for the Taylor/Barnett residence. In fact, the affidavit encompasses searches of five target locations, including the two EHC clinics and Defendant Grenkoski's residence. D.E. 264-2 at 1.

Second, Defendants challenge as overbroad several warrants for email and other online accounts and for devices associated with EHC, including Defendant Taylor's MacBook and iPhone, Defendant Barnett's MacBook and iPhone, and Defendant Herrell's MacBook. The Court understands these warrants to be as follows, each of which was issued by the undersigned:

- 6:18-MJ-6043-HAI, for EHC records stored by Salesforce.com, from January 11, 2013, to June 2018.

- 6:18-MJ-6113-HAI for EHC records stored by Salesforce.com up to December 2018.[2]

- 6:19-MJ-6014-HAI for Gmail accounts, including two that appear to be Barnett's and one with the name "EXPRESSHEALTHCAREMD."

- 6:19-MJ-6015-HAI for Taylor's iCloud and Me.com accounts and Herrells' Mac.com account.

- 6:19-MJ-6016-HAI for Taylor's Yahoo account.

- 6:19-MJ-6024-HAI, for Herrell's MacBook Pro laptop.

- 6:19-MJ-6025-HAI, for Taylor's MacBook Pro laptop.

- 6:19-MJ-6026-HAI, for Barnett's MacBook Pro laptop.

- 6:19-MJ-6028-HAI, for Taylor's iPhone.

---

[2] Defendants' motions incorrectly describe the Salesforce warrants as issuing from East Tennessee. D.E. 264 at 18; D.E. 282 ¶ 8.

- 6:19-MJ-6029-HAI, for Barnett's iPhone.

Third, Defendants challenge the manner of execution of the warrants. As Mr. Davies explained on the call, the government seized five-year's worth of Taylor's and Barnett's electronic communications. Defendants do not know how this data was processed. What forensic techniques were used? Did the government employ methods (such as keywords) to limit their review to only materials covered by probable cause? Defendants argue that if the search of their data went beyond the scope of the warrants, those searches should be suppressed. The Court will also acknowledge some other issues raised in the motion which are not among the three live controversies identified on the call.

## I. Warrants for Information Held Outside the District

The Court first addresses Defendants' argument that warrants issued to be executed in other Districts under the Stored Communications Act ("SCA," 18 U.S.C. § 2701 *et seq.*) are invalid. Defendants' motion argues that certain warrants were "issued by magistrate judges in excess of their jurisdiction." D.E. 264 at 2. They point to the jurisdictional limits of Federal Rule of Criminal Procedure 41(b) and 28 U.S.C. 636. *Id.* at 14-16. They argue that warrants issued for electronic information stored in another jurisdiction (such as the email accounts and Salesforce data) exceed these jurisdictional limitations. *Id.*

Nevertheless, Defendants concede that "[d]espite the limits of Rule 41, courts have held that extra-territorial warrants may issue based on the [Stored Communications Act ('SCA').]" D.E. 264 at 16. "[S]ome courts have found that the SCA is a circumstance that extends magistrates' authority." *Id.* Defendants argue such cases were wrongly decided because the SCA itself requires that SCA warrants issue "using the procedures described in the Federal Rules of Criminal Procedure." 18 U.S.C.A. § 2703(a), (b), (c). Defendants' reply brief clarifies that their

position is that "courts may eventually agree with Movants." D.E. 325 at 3 n.3. Just as the Supreme Court in *Carpenter* overruled prior decisions concerning cellsite location information, they argue, courts may in the future change course on out-of-district electronic account seizures. *Id*. Defendants did not mention this issue during the August 10 teleconference.

Defendants have made clear that this territorial-jurisdiction issue was raised to preserve it for appeal. "[S]everal of the issues were raised to preserve Movants' rights . . . [because] case law is not in Movants' favor." D.E. 325 at 1. They list the extraterritoriality issue among the "arguments Movants raised for preservation purposes and/or as good faith extensions of the law." *Id*. at 3 & n.3. As the government points out, the First, Second, Third, and Seventh Circuits have ruled contrary to Defendants' argument, and district courts in this Circuit have followed suit. D.E. 305 at 2-4. The government also points to case law establishing that suppression is not the remedy for a Rule 41 violation. *Id*. at 4.

Defendants concede that case law is not currently on their side; magistrate judges may issue SCA warrants for data held outside their judicial district. Given that Defendants concede the law is currently against them on this issue, their motion to suppress on extraterritoriality grounds should be denied.

## II. Use of Non-Warrant Instruments.

Defendants initially asked the Court to suppress materials that were "obtained without a warrant." D.E. 264 at 2. They point to "a variety of mechanisms" the government used to obtain information and evidence. *Id*. This includes grand jury subpoenas and administrative subpoenas, trash pulls, purchased patient files, consent forms, regulatory inspections, materials from the IRS, third-party discovery, and "miscellaneous other methods," including perhaps non-warrant orders under the SCA. *Id*. at 5-6.

In their reply, however, Defendants number this issue among those that were "raised for preservation purposes and/or as good faith extensions of the law." D.E. 325 at 3. Although they request relief under *Carpenter v. United States*, 138 S. Ct. 2206 (2018), Defendants acknowledge that *Carpenter* "was limited to CSLI and that courts have construed the holding in that limited manner." *Id*. at n.4. They speculate that, as technology continues to evolve, so will the law involving cellphones. *Id*.

Defendants also acknowledge they challenged the use of grand jury subpoenas and administrative subpoenas only to preserve the issues for appeal. D.E. 325 at 5. They clarify they "did not challenge the use of administrative subpoenas to third-parties post-indictment." *Id*. at 6. Defendants also argued that, once the 2018 civil forfeiture case was instituted, they should have been afforded heightened protections as if a criminal case had been instigated. *Id*. at 6. But they agree that the criminal prosecution itself was not yet initiated. And this issue is not among the live issues that Defendants delineated in their reply brief and the August teleconference.

Given that Defendants cannot point to controlling law supporting their position on these issues, the motion to suppress on the basis of misuse of non-warrant investigatory tools should be denied. The issues were raised for preservation purposes, and they are duly preserved.

### III.  Processing of Seized Data

The Court next turn to Defendants' challenge to the government's manner of seizing and processing electronic data. According to the motion to suppress, the residential warrants, email warrants, and Salesforce warrants "required the wholesale production of information akin to general warrants and then entrusted any subsequent limiting to the prosecution team's virtually limitless searching." D.E. 264 at 18.

The government interpreted this argument as "a challenge to the warrants' use of a two-

step procedure – seizing or copying an entire electronic account or storage medium (or a date-limited subset thereof) and reviewing it later to determine what electronically stored information falls within the scope of the warrant." D.E. 305 at 5. The government then provided case law in support of the practice. *Id*.

In reply, Defendants clarified that the use of a two-step procedure was not their "fundamental issue." D.E. 325 at 4. "The issue is whether governmental review (on scene *or* after) is conducted pursuant to a warrant that meaningfully limits that review based on the specific probable cause." *Id*. Defendants appear to be saying that it is the *warrants*, not the *procedures*, that are in the spotlight. But then, on the August 10 teleconference, Mr. Davies said,

> The issue is that, to describe it broadly, essentially all of Dr. Taylor and Ms. Barnett's electronic communications over a period of at least five years were seized by the government. And there was a period of several years in which the government I believe was processing that information. So, there are issues that I think are evidentiary in nature, which are essentially: How was the information processed? In other words, what forensic techniques were used? Was there any effort to restrict the examination to information for which there was probable cause? Those would be things like the use of forensic techniques, the use of keywords that would limit the results to those things which are identified in the various warrants. So essentially issues of how the warrants were executed and processed.

When asked by the Court whether suppression was an available remedy for such issues, Mr. Davies responded,

> There is some authority . . . that when a search goes beyond the authority in the warrant, anything that is seized and searched beyond the scope of the warrant should be suppressed. I don't have a case that's just like this one. We have to analogize from cases that involve document searches and suppression. But there are cases that hold that suppression is an appropriate remedy when documents are seized outside the scope of what there's probable cause for.

Recording at 17:45-20:16 (Court's transcription).

This reads like a challenge based upon overbreadth, which concerns whether a "category as specified is too broad in the sense that it includes items that should not be seized." *United States*

*v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011)).  An "infirmity due to overbreadth does not doom the entire warrant."  *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) (quoting *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)).  The remedy for overbreadth is "to sever the offending phrase from the warrant, suppress any evidence collected under it, and admit the evidence collected under the valid portions that remain."  *United States v. Chandler*, 571 F. Supp. 3d 836, 844 (E.D. Mich. 2021) (citing *Castro*, 881 F.3d at 965).  If construed as an overbreadth challenge, Defendants have not identified any evidence that they believe was seized due to any warrant including an overbroad category.  Overbreadth as to specific warrants is discussed in more detail below.

As to the defense's questions concerning forensic techniques, keywords, and the like, they appear to be fishing for information rather than articulating a basis for suppression.  While the defense presents a legally cognizable argument about overbreadth, they have not provided authority that evidence may be suppressed on the basis of imperfect forensic techniques or keyword utilization.  Any argument that evidence should be suppressed on the basis of poor forensic techniques is insufficiently developed for the Court to rule upon.  This is not a *factual* problem.  The issue is not a dearth of factual information that could be remedied by holding an evidentiary hearing.  The issue instead is this:  even assuming the government used poor forensic techniques for processing the seized data, the defense has provided no authority that suppression should follow.

Further, the defense has provided no authority suggesting a Court should convene an evidentiary hearing upon allegations of improper handling of properly seized data.  The defense wants to know how the forensic examinations were conducted.  But the Court has no need to set a hearing when no law has been presented suggesting that *suppression* of evidence could flow from

9

improper forensic techniques.  Thus, Defendants' prayer for suppression of evidence related to forensic techniques should be denied.

## IV.  Search Warrant Overbreadth

This leaves the Court with overbreadth/particularity challenges to the warrants related to electronic evidence.  On these issues, the Court looks to the four corners of the warrants, particularly here the attachments that delimit the things to be seized.  *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016).

> The Fourth Amendment requires warrants to "particularly describe the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  "A general order to explore or rummage through a person's belongings is not permitted.  The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized."  *United States v. Savoy*, 280 F. App'x 504, 510 (6th Cir. 2008).  The degree of specificity required for the particularity requirement "is flexible and will vary depending on the crime involved and the types of items sought."  *Hanna*, 661 F.3d at 286.  A warrant is "sufficiently particular if it is specific as to the circumstances and the nature of the alleged crime permit."  *United States v. Logan*, 250 F.3d 350, 365 (6th Cir. 2001).

*In re Search of Recs., Info., & Data Associated with 14 Email Addresses Controlled by Google, LLC*, 438 F. Supp. 3d 771, 776 (E.D. Mich. 2020).

There is extra flexibility in searches of electronic data.  The "problem" with applying the Fourth Amendment's particularity requirement to computer searches "lies in the fact that [evidence] could be nearly anywhere on the computers.  Unlike a physical object that can be immediately identified as responsive to the warrant or not, computer files may be manipulated to hide their true contents."  *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012).  Concerning seizure and search of computers,

> The federal courts are in agreement that a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a sufficient chance of finding some needles in the computer haystack.

*Id* at 652 (citation and quotation marks omitted).

In reviewing a warrant that has already been issued and executed, the Court applies a deferential lens. *Abernathy*, 843 F.3d at 250. The question is whether the issuing magistrate had a "substantial basis" for finding the affidavit established probable cause that the evidence would be found at the place to be searched. *United States v. Hills*, 27 F.4th 1155, 1191 (6th Cir. 2022); *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001). And courts should review the sufficiency of the affidavit "in a commonsense, rather than hypertechnical manner." *Greene*, 250 F.3d at 479.

These warrants can be analyzed in four clumps. First, the East Tennessee warrants for the Taylor/Barnett and the Herrell residence have identical lists of items to be seized. *See* D.E. 264-1 at 2-4 (Attachment F); 282-1 at 5 (Attachment H). Second, the five warrants to search laptops and cellphones have identical lists of items to be seized. *See* D.E. 282-2 at 4-6 (Attachment B). Third, the three warrants for Gmail accounts, Apple accounts, and Taylor's Yahoo accounts have identical lists of items to be seized. *See* D.E. 282-3 at 7-8 (Attachment D.II); D.E. 305-1 at 7-8 (Attachment A & B.II). Fourth, the two warrants for Salesforce.com data have identical lists of items to be seized. *See* D.E. 264-3 at 6-7 (Attachment B.II).

To be clear, there are two sets of warrants at issue concerning the laptops and cellphones seized as part of the residence searches. First, Defendants attack the residential warrants themselves. They argue that the warrant affidavit "failed to establish probable cause that there was criminal conduct occurring at the residence or that it would be found within the entirety of [the seized] electronic devices." D.E. 264 at 22. But the contents of the devices were not searched under the residential warrants. They were taken into custody under the residential warrants, but the searches of their contents were governed by the later warrants issued for the devices.

11

### A.  Residential Search Warrants

So, the Court first considers the residential warrants.  As Defendants' reply brief makes clear, "The issue is not whether there was probable cause for the residence but *whether any probable cause was coextensive with the seized electronic devices*."  D.E. 325 at 7 (emphasis added).  These devices are the laptops of Taylor, Barnett and Harrell and the cellphones of Taylor and Barnett, all five of which were later searched pursuant to separate warrants that will be considered in the next subsection.  Defendants suggest the "problems" are "whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take" and "whether the category as specified is too broad in the sense that it includes items that should not be seized."  *Id.* at 4 (quoting *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011)).  *Richards* makes clear that these are the "two rather different" problems addressed by the cases on "particularity."  *Id.*  The Court is mindful of the distinction and has done its best to apply it to the various arguments now presented.  Herrell "likewise asserts that the affidavit in support of a search warrant for his residence did not establish probable cause to seize and conduct virtually limitless searches of electronic devices."  D.E. 282 ¶ 11.

The first question is therefore whether the smartphones and laptop computers were properly seized under the scope of the warrants to search the residences.  An attachment to both residential warrants identifies the "Things to be seized."  D.E. 264-1 at 2; D.E. 282-1 at 5.  The attachment states as follows:

> The items to be seized from the premises . . . constitute evidence, fruits, and/or instrumentalities of violations of 21 U.S.C. §§ 846 and 841, and 18 U.S.C. §§ 1035 and 1347, including the following:
>
> - A computer (laptop, desktop, or tablet) being used for EHC business activities
> - Any records or documents referring to EHC or an EHC patient
> - Financial records reflecting illicitly obtained monies and/or forms of assets acquired through the diversion of controlled substances or defrauding a health care

benefit program, which include federal and state tax returns, employment papers, banking records and pass books, account information, canceled checks, deposit records, income and expenditure records, property acquisition records, money market accounts and/or similar accounts, records of stocks and/or bonds, safe deposit box keys, records reflecting vehicles owned, purchased, sold or leased, and negotiable instruments;

- Records of off-site locations to store records, including safe deposit box keys, and records or receipts of rental agreements for storage facilities;
- Currency in excess of $1,000;
- Assets purchased with EHC income and documentation regarding the same;
- Real estate documents related to properties purchased with EHC proceeds/income;
- Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes and documents, and other items which reflect names, addresses, telephone numbers, and communications regarding the diversion of controlled substances or defrauding a health care benefit program by Robert Taylor and other practitioners, employees, or contractors at EHC locations in Jacksboro, TN or Harriman, TN;
- Indicia of occupancy, residency or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, addressed envelopes, escrow documents and keys; and
- The opening, search and removal, if necessary, of any safe or locked receptacle or compartment, including briefcases, as any of the prope1ty heretofore listed may be maintained.

*Id*.

The first observation here is that, while the attachment authorizes seizures of computers, the first listed categoryonly authorizes seizures of computers that contain or constitute "evidence, fruits, and/or instrumentalities of" the alleged crimes and that were used for EHC business activities.[4]  D.E. 264-1 at 2; 282-1 at 5.  This undercuts Defendant's argument that the attachments are circular.  Defendants argue that the residential warrants

authorized agents to "examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized" [D.E. 264-1 at 3 ¶ 2.d] but the list of "items to be seized" included the computer equipment itself (i.e., "A computer (laptop, desktop, or tablet) being used for EHC business activities."

_____

[4] The Court does not interpret the reference to "A computer" to mean that no more than one computer device could be seized.  And Defendants do not appear to offer such an argument.

13

D.E. 325 at 8.

This does not tell the whole story because the attachment limits the search and seizure to computers *used for EHC business* and the subsequent search of the *contents* of those devices is for the retrieval of evidence, fruits, and instrumentalities of the charged crimes. Accordingly, Defendants fail to distinguish this case from *Evers* and others which hold that, when it comes to computer data, agents may need to search an entire "haystack" of data to find the "needle" of evidence.

> In this case, as in *Evers*,
>
> the warrant was as specific as the circumstances and the nature of the activity under investigation permitted . . . and confined the search to evidence of [drug and fraud crimes on the [computers and cellphones]. . . . [Defendants present no evidence] that the officers engaged in prohibited exploratory rummaging or made inadvertent discoveries in their search of [their] electronic devices.

*United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012).

In this case, the residence-search affidavit alleged that EHC was permeated with illegal activity. Even though the affidavit does not specifically discuss computers in the possession of Defendants, common knowledge would suggest that the individuals who owned and managed the business would use computers in doing so, and that those computers could contain evidence relevant to the suspected criminal activity. And the affidavit noted that certain EHC business was conducted electronically using the Salesforce remote electronic record-keeping platform. D.E. 264-2 ¶¶ 142, 145-49. The affidavit also explained that records may be found in the form of "data stored on a computer's hard drive or other storage media" at the residences. *Id*. ¶¶ 176-81. The issuing magistrate had a substantial basis for approving the list of things to be seized.

Finally, the residential warrants authorized the seizure of records pertaining to EHC business, including those in electronic form. Once the agents had reason to believe that the seized

14

laptops and cellphones had been used for conducting EHC business, they could be seized as instrumentalities or items containing evidence of the charged crimes and conspiracies. The categories specified are neither insufficiently particular or overbroad.

### B. Laptop and Cellphone Search Warrants

As just discussed, the laptops and cellphones were properly seized (for later inspection) under the scope of the residential search warrants. But Defendants argue the subsequent warrants to search the contents of these five devices were also overbroad.

According to Defendants' reply brief, (1) the date limit in the warrants was overly broad, going even beyond the point at which EHC had been sold and movants were known to be represented by counsel, and (2) the "things to be seized" included "categories so broad as to be meaningless and provided no limitations on the searching agent." D.E. 325 at 4. To review, the five warrants under consideration are:

- 6:19-MJ-6024-HAI, for Herrell's MacBook Pro laptop.

- 6:19-MJ-6025-HAI, for Taylor's MacBook Pro laptop.

- 6:19-MJ-6026-HAI, for Barnett's MacBook Pro laptop.

- 6:19-MJ-6028-HAI, for Taylor's iPhone.

- 6:19-MJ-6029-HAI, for Barnett's iPhone.

These five warrants (plus a warrant to search Defendant Grenkoski's iMac computer, which has not been challenged) were supported by a single affidavit (with attachments) from DEA Special Agent Jared Sullivan. A copy of the attachments delineating the items to be seized is attached to Herrell's motion. D.E. 282-2. The attachments authorize the "forensic examination" of the various devices for the purpose of identifying:

1.      All records . . . that relate to violations of 21 U.S.C. §§ 841, 843(a)(2), and 846, and 18 U.S.C. §§ 1035 and 1347 involving Robert E. Taylor, Lori M. Barnett, Evann M.

Herrell, Mark Grenkoski, and others affiliated with EHC Medical Offices, PLLC since January 11, 2013, including:

a.  All evidence relating to the unlawful dispensing of controlled substances;
b.  EHC communications or records such as policies and procedures, memos, emails and other digital communications, and employee directives relating in any way to the issuance of prescriptions or billing for services or procedures to any insurer;
c.  Evidence of communications with pharmacies or other providers of medical care;
d.  Evidence of any complaints made to EHC about its controlled substance prescriptions, whether made by a pharmacy, patient, provider, or any other individual or entity;
e.  Evidence relating to the collection, submission and/or billing of urine samples and any documents referencing the collection, submission and/or billing of urine samples;
f.  Records relating to physician or patient scheduling or attendance;
g.  Billing and deposit receipts/records, including records of any submissions to (or communications with) Medicare, Medicaid, or private insurers;
h.  Financial records or other information showing the payment, receipt, transfer, or movement of money relating to EHC's operations;
i.  Communications or records relating to the prices EHC charged its patients for office visits, services, or procedures, including evidence sufficient to identify all individuals responsible for setting those prices or collecting payment from EHC's customers;
j.  Evidence indicating the user's communications and actions as they relate to the crimes under investigation;
k.  Evidence indicating how and when the device was accessed or used, to determine the geographic and chronological context of access, use, and events relating to the crimes under investigation and to the device's user;
l.  Evidence relating to any credit or bank account numbers used by device user and co-conspirators during the times of the particular crimes under investigation;
m.  Evidence reasonably indicating the device user's state of mind as it relates to the crime under investigation;
n.  Evidence that may identify any co-conspirators or other persons relevant to the particular crimes under investigation, including records that help reveal their whereabouts.
o.  any information recording the device's user's schedule or travel;

2.      Evidence of user attribution showing who used or owned [the device] at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records of Internet Protocol addresses used and records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

D.E. 282-2 at 3-6.

The categories here are broad, but they are appropriate limitations under the circumstances. "Applying a reasonableness analysis on a case-by-case basis, the federal courts have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers," and the searches here were likewise reasonable. *United States v. Richards*, 659 F.3d 527, 539 (6th Cir. 2011). The record as a whole and the two findings below support these conclusions.

### 1. The date range is not unreasonably broad

The date range (January 11, 2013, to the execution of the warrant in April or May 2019) was based on the date that EHC began operating. Although this date is not mentioned in the device-search warrants, the affidavit underlying the five device-search warrants incorporated the affidavit for the December 2018 Salesforce warrant (6:18-MJ-6113-HAI). That 2018 Salesforce warrant affidavit states EHC came into "existence" on January 11, 2013, and alleged suspicious red-flag activity, per KASPER data, during 2013. Given the government's theory that EHC was a sham pill mill that sent up red flags from the very start, the date limitation, though it covered more than five years, was a reasonable one under the circumstances.

The time span here is less than the seven-year span upheld in another case that involved a multi-year fraud conspiracy. *In re Search of 14 Email Addresses Controlled by Google, LLC*, 438 F. Supp. 3d 771, 776-77 (E.D. Mich. 2020). There, as here, the time span was "based on the scope of the investigation." *Id*. at 777. The general rule is that a warrant limited to the time period when criminal activity took place is sufficiently particular to target the evidence that was the subject of

17

the investigation. *Id*. at 776-77 (citing *United States v. Hanna*, 661 F.3d 271, 287 (6th Cir. 2011)). Stated differently, the affidavits provided the undersigned a substantial basis for believing evidence of criminal activity could be found on data going back to 2013.

Defendants appear to claim it was improper to seize data generated after the sale of EHC. *See* D.E. 325 at 4. This argument lacks specificity and is unsupported by any authority. The Court deems it undeveloped and waived. In any event, common sense suggests that, even after the sale of EHC, the coconspirators could continue to produce incriminating evidence. Given the scope of the drug and fraud conspiracies, aspects of the conspiracies could well have continued after the sale of EHC. For example, some of the defendants in this matter continued to work at EHC. The patients continued to appear for services. And actions to cover up the illegal conduct could continue beyond the sale of the two clinics. As such, the Court sees no basis for excluding evidence produced after the sale of EHC.

Defendants also appear to claim it was improper to seize evidence created after Defendants were known to be represented by counsel. D.E. 325 at 4 n.5. But again, this argument is insufficiently developed and waived. Defendants present no authority suggesting that a search warrant may not be issued or executed against a person represented by counsel (or that suppression would be an appropriate remedy in such cases). Instead, they point to other briefing concerning their motion to dismiss for privilege violations. *Id*.

### 2. The list of items to be seized was not unreasonably broad.

The description of the various types of evidence to be seized from the devices was also reasonable under the circumstances. The attachments are to be analyzed in a commonsense, not hypertechnical manner. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). The degree of specificity required "must be flexible, depending upon the type of items to be seized and the

crime involved." *United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000). And it is difficult to narrow the focus of searches of computer data because evidence "could be nearly anywhere on the computers" and will sometimes be hidden or manipulated. *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012). The search of all five devices was supported by probable cause to believe some "needles" of evidence existed within "the computer haystack." *Id.* at 652 (citation and quotation marks omitted). And the government provides expansive authority for the proposition that entire email accounts can be searched when there is probable cause to believe evidence of the crimes is contained somewhere therein. D.E. 305 at 6. The warrant applications provided a substantial basis for believing the types of evidence to be seized could contain evidence of the alleged crimes.

Further, an "infirmity due to overbreadth does not doom the entire warrant." *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) (quoting *Greene*, 250 F.3d at 477). Even if the warrant attachment was overbroad and permitted seizure of information not supported by probable cause, the remedy would be "to sever the offending phrase from the warrant, suppress any evidence collected under it, and admit the evidence collected under the valid portions that remain." *United States v. Chandler*, 571 F. Supp. 3d 836, 844 (E.D. Mich. 2021) (citing *Castro*, 881 F.3d at 965).

Here, Defendants specify a single item from the attachments as being overbroad— paragraph 1.m, which targets "[e]vidence reasonably indicating the device user's state of mind as it relates to the crime under investigation." D.E. 282-2 at 5. Defendants argue this item is broadly worded and is "a subjective category allowing subjective judgment." D.E. 325 at 5. They provide no authority that items to be seized cannot involve "subjective elements." But more importantly, Defendants identify no specific evidence that was seized under paragraph 1.m. What pieces of evidence would then be suppressed? This lack of an available remedy provides another reason to

19

deny the motion to suppress.

### C. Email Account Warrants

On March 19, 2019, the undersigned issued three search warrants that together targeted multiple email accounts.  6:19-MJ-6014, -6015, -6016.  Each warrant had an identical list of items to be seized.  Two examples are filed in the record.  D.E. 282-3 at 7-8; D.E. 305-1 at 7-8. Defendant Herrell argues the warrants "required the wholesale production of information akin to general warrants and then entrusted any subsequent limiting to the prosecution team's virtually limitless searching.  The warrants lack particularity and are overly broad."  D.E. 282 ¶ 9.

The warrants for email accounts authorize the seizure of

[a]ll information . . . that constitutes evidence of violations of 21 U.S.C. §§ 841, 843(a)(2), and 846, and 18 U.S.C. §§ 1035 and 1347 by Dr. Robert E. Taylor, Lori Barnett, Evann Herrell, or others associated with EHC occurring on or after January 11, 2013 (this period defines the "Relevant Period" for the search), including . . . information pertaining to the following matters during the Relevant Period:

a.      All evidence relating to the unlawful dispensing of controlled substances;

b.      EHC communications or records such as policies and procedures, memos, emails and other digital communications, and employee directives relating in any way to the issuance of prescriptions or billing for services or procedures to any insurer;

c.      Evidence of communications with pharmacies or other providers of medical care;

d.      Evidence of any complaints made to EHC about its controlled substance prescriptions, whether made by a pharmacy, patient, provider, or any other individual or entity;

e.      Evidence relating to the collection, submission and/or billing of urine samples and any documents referencing the collection, submission and/or billing of urine samples;

f.      Records relating to physician or patient scheduling or attendance;

g.      Billing and deposit receipts/records, including records of any submissions to (or communications with) Medicare, Medicaid, or private insurers;

h.      Financial records or other information showing the payment, receipt, transfer, or

movement of money relating to EHC's operations;

i.      Communications or records relating to the prices EHC charged its patients for office visits, services, or procedures, including evidence sufficient to identify all individuals responsible for setting those prices or collecting payment from EHC's customers;

j.      Evidence indicating the email account user's communications and actions as they relate to the crimes under investigation;

k.      Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the email account user;

l.      Evidence relating to any credit or bank account numbers used by the email account user and co-conspirators during the times of the particular crimes under investigation;

m.      Evidence reasonably indicating the email account user's state of mind as it relates to the crime under investigation;

n.      Evidence indicating the identity of the person who used the email account, including information provided during registration, alternative email addresses, and IP addresses;

o.      Evidence that may identify any co-conspirators or other persons relevant to the particular crimes under investigation, including records that help reveal their whereabouts.

D.E. 282-3 at 7-8; D.E. 305-1 at 7-8.

As with the searches of their devices, Defendants object to the time limitation as overbroad. But the same analysis, discussed above in Section IV.B.1, applies here. The theory of the crime was that, from the start, EHC engaged in fraud and drug diversion. It was reasonable under the circumstances to limit the production to items created from EHC's inception in 2013 to the time of the warrant execution. *See In re Search of Recs., Info., & Data Associated with 14 Email Addresses Controlled by Google, LLC*, 438 F. Supp. 3d 771, 776 (E.D. Mich. 2020).

The other argument is that the list of items to be seized is overbroad. As discussed above in Section IV.B.2, the remedy for warrant terms that allow for seizures unsupported by probable

21

cause is to strike those terms by the warrant and suppress any items seized under only those terms. *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018).

The problem here is that Defendants do not identify any warrant terms that permitted seizure of items for which there was no probable cause. The only exception is what is discussed above in Section IV.B.2, an objection to evidence of state of mind. Defendants also identify no particular pieces of information that were alleged to be seized without probable cause. *United States v. Chandler*, 571 F. Supp. 3d 836, 844 (E.D. Mich. 2021). Given these circumstances, their request for suppression must be denied.

## D. Salesforce.com Warrants

On June 6, 2018, the undersigned issued a warrant to seize information associated with EHC stored by Salesforce.com, a provider of online data management and storage services. 6:18-MJ-6043-HAI. On December 12, 2018, the undersigned issued a similar warrant targeting EHC records at Salesforce; this one was designed to capture data entered after the execution of the earlier warrant. 6:18-MJ-6113-HAI. The two warrants have identical lists of materials to be seized. A copy of the December warrant's list is attached to Herrell's motion (D.E. 264-3 at 6-7) and the government's response (D.E. 305-3 at 7-8). These warrants authorized the seizure of

> information . . . that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841, 843(a)(2), and 846, and 18 U.S.C. §§ 1035 and 1347 involving Robert E. Taylor, Lori M. Barnett, Evann M. Herrell, Helen Bidawid, and others affiliated with EHC Medical Offices, PLLC since January 11, 2013, including . . .information pertaining to the following matters:
>
> (a) All records associated with current and former patients of the clinics run by EHC Medical Offices, PLLC in Jacksboro, Tennessee and Harriman, Tennessee.
>
> (b) The identity of the person(s) who created or registered the account, including records that help reveal the whereabouts of such person(s).
>
> (c) The identity of the person(s) who were authorized to access the account, including records that help reveal the whereabouts of such person(s).

22

(d) The identity of the person(s) who made any entries into or edits to any record stored in the account, including records that help reveal the whereabouts of such person(s).

(e) For each time the account was accessed since January 11, 2013, the identity of the person(s) who accessed the account, the time of access, the geographic location and IP address from which the account was accessed, and the data that was uploaded, downloaded, or viewed.

(f) For each time the account was accessed since January 11, 2013, the identity of the person(s) who accessed the account, the time of access, the geographic location and IP address from which the account was accessed, and the data that was uploaded, downloaded, or viewed.

(g) Any data or information showing the dates and times any patient records were created, modified, or accessed, as well as the identity of the user taking such action.

D.E. 264-3 at 6-7; D.E. 305-3 at 7-8.[5]

Defendant Herrell asserts simply that these warrants "required the wholesale production of information akin to general warrants and then entrusted any subsequent limiting to the prosecution team's virtually limitless searching. The warrants lack particularity and are overly broad." D.E. 282 ¶ 9. Defendants Taylor and Barnett assert that the information to be seized was "only slightly less broad" than "all information associated with EHC, Dr. Taylor and Ms. Barnett." D.E. 264 at 18. The seizure was limited to information "since 2013 but providing no limitation on the mechanism by which a tailored search would be conducted." *Id*.

Given these brief arguments, the Court finds the overbreadth challenge to the Salesforce warrants is insufficiently developed and therefore waived except to the extent they object to the time limitation as overbroad. Here, the same analysis applies as for the warrants to search the devices, discussed above in Section IV.B.1. The theory of the crime was that, from the start, EHC engaged in fraud and drug diversion. It was reasonable under the circumstances to limit the

---

[5] The Taylor/Barnett motion and the Herrell motion both state these warrants were issued by the Eastern District of Tennessee, but this is incorrect. D.E. 264 at 18; D.E. 282 ¶ 8.

production to items created from the beginning of EHC—from 2013 to the warrant execution. The undersigned had a reasonable basis for authorizing the search of electronic records extending back to 2013.

### E.  The Good-Faith Exception

Finally, even if any of the warrants discussed herein was overbroad or insufficiently particular, the good-faith exception would bar suppression of the evidence as a remedy. The exclusionary rule is a harsh remedy intended to deter flagrant police misconduct. *See generally Herring v. United States*, 555 U.S. 135 (2009); *United States v. Leon*, 468 U.S. 897 (1984). "[E]xclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006). The "crucial finding" to support suppression is that the police misconduct is "'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (quoting *Herring*, 555 U.S. at 144).

The *Leon* good-faith exception allows admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Paull*, 551 F.3d 516, 523 (6th Cir. 2009) (quoting *Leon*, 468 U.S. at 905). Only in exceptional circumstances is law enforcement to disregard a magistrate judge's authorization—for instance, when a warrant is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, or when a warrant is so facially deficient that it could not reasonably be presumed valid. *United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012) (citations and quotation marks omitted). The warrants here were neither bare-bones nor facially insufficient. Defendants cede this point. D.E. 325 at 9 ("Movants agree that the affidavit was not barebones and that the warrants

were issued by neutral and detached magistrates[.]").  For this independent and sufficient reason, the drastic remedy of suppression is inappropriate.  *United States v. Hills*, 27 F.4th 1155, 1192 (6th Cir. 2022).

### V.  Conclusion

For the reasons discussed above, the undersigned **RECOMMENDS** that the motion to suppress of Defendants Taylor and Barnett, joined by Defendant Herrell (D.E. 264) be **DENIED.** Defendants have shown no authority for conducting an evidentiary hearing on the handling of seized data.  Defendant have not shown the warrants to seize their devices and to search their devices and digital accounts were impermissibly overbroad.  Even if they were, the warrants were not so defective as to require suppression in the face of the good-faith exception.  Other arguments were only raised for preservation purposes, and the Court should grant no relief on those.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge.  Any objection must be filed within **fourteen days** of the entry of this order.  Failure to object per Rule 59(b) waives a party's right to review.  Upon expiration of that fourteen-day period, this matter will be submitted to Judge Van Tatenhove for his consideration.

This the 4th day of October, 2022.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**