UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Crim. No. 6:21-cr-00013-GFVT-HAI |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ROBERT TAYLOR, *et al.*, ) | **&** |
| ) | **ORDER** |
| Defendants. ) | |
| ) | |

*** *** *** ***

This matter is before the Court on account-holder Defendants Taylor, Barnett, Herrell, and Grenkoski's objection to Magistrate Judge Ingram's order controlling disclosure of electronic evidence found on their seized phones and laptops. [R. 459; R. 445.] Volumes of motions have been submitted regarding this data because they contain privileged materials. Now, the account holders object to Judge Ingram's discovery order, which requires them to identify privileged documents by mid-November. [R. 459.] Because the objection is meritless, it will be **OVERRULED**.

**I**

The account holders' electronic devices were seized in late 2018. [R. 258-7 at 1.] A few months later, counsel for Defendants Taylor and Herrell informed the Government that privileged materials would be found on the devices. [R. 237 at 4.] The Government initiated a filter review process in which a non-prosecuting AUSA reviewed the materials and designated them privileged, non-privileged, or potentially privileged. [R. 258-7 at 2-3.] The non-privileged materials were released to the prosecution team, while all of the materials and their designations were shared with the account holders. [R. 237 at 9.] The Government then moved for a

discovery protocol governing disclosure of the electronic evidence.[1]  [R. 237.]   This protocol addressed the primary issues presented by the data by allowing (1) the account holders to review the potentially privileged material and identify what is actually privileged and (2) the co-defendants to brief whether *Brady* or *Giglio* applies to privileged materials outside of the prosecution team's control.  [R. 237-1.]  Judge Ingram adopted the Government's proposed protocol in July noting that, though many Defendants responded in opposition, none proposed an alternative disclosure process.  [R. 290 at 4.]  In August, the Court overruled objections to that order and the discovery protocol became final.  [R. 356.]

More issues arose once the Court and parties attempted to proceed under the discovery protocol.  [*See, e.g.*, R. 363; R. 375; R 382; R. 383; R. 386.]  After a late September hearing on the matter, Judge Ingram entered an order reinforcing the terms of the protocol and requiring the account holders to assert privilege over PPM by November 4.   [R. 445.]  All materials that they do not identify as privileged will be disclosed to the prosecution team and their co-defendants.  *Id.*  The account holders object to this order, claiming that their Sixth Amendment right to counsel is breached by requiring them to review the documents deemed potentially privileged.

II

A

Magistrate judges have broad discretion over discovery and other non-dispositive matters.  28 U.S.C. § 636(b)(1)(A) allows a district court to "designate a magistrate to hear and determine any pretrial matter pending before the court."  "When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506,

---

[1] The Government attempted to create a process for disclosure in collaboration with the account holders as early as May 2021.  [R. 258-7.]  The parties could not reach an agreement and the Government moved for a discovery protocol a year later.  [R. 237.]

509 (6th Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)). Pursuant to Federal Rule of Criminal Procedure 59(a), the Court will set aside or modify a magistrate judge's non-dispositive order only if the Court finds that at least a portion of the order is "contrary to law or clearly erroneous."

The discovery order is non-dispositive pursuant to 28 U.S.C. § 636(b)(1)(A). [*See* R. 445 at 10; R. 459 at 1-2.] Accordingly, the Court will only reject it if it was contrary to law or clearly erroneous. An order is contrary to law if it "'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *United States v. Winsper*, 2013 WL 5673617 at *1 (W.D. Ky. Oct. 17, 2013)). "A [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Bisig*, 940 F.3d at 219 (clarifying that the clear error standard applies to factual determinations). The account holders' objection is meritless because they do not identify any erroneous factual findings or law contradicting the discovery order.

**B**

The account holders claim "it is a violation of the Sixth Amendment for the Court to require the Defendants to expend a significant amount of their increasingly scarce resources to review thousands of haphazardly sorted documents for the benefit of the government and other co-defendants." [R. 459 at 4.] Specifically, they take issue with the following: (1) the PPM includes "hundreds of thousands of files," including many which are clearly not privileged (2) the Government has not shared the search terms it used to filter out privileged materials, (3) the PPM is not indexed, and (4) the PPM's format requires an expensive e-discovery platform. *Id.* at

2-8. Ultimately, the account holders believe the discovery order shifts a burden to them that should have been on the Government. *Id.* at 4.

The objection lacks legal support or argument. The cited cases merely stand for the propositions that (1) the right to counsel is in force throughout the proceeding, (2) the Constitution affords a "meaningful opportunity to present a complete defense," (3) and criminal defendants retain autonomy to decide portions of their defense. *Id.* at 3-4 (citing *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018)). None of these cases are specifically implicated by the discovery order. The account holders do not cite, and the Court is unaware of, any case establishing that the Sixth Amendment right to counsel requires the Government to index PPM, share the search terms it used, release it in any particular format, or limit the amount of released documents.[2]

The Court recognizes that the Government returned a significant amount of documents designated as PPM.[3] But this raises the crucial weakness in the account holders' objection. Their filing reads as if they were asked to conduct this privilege review recently. In reality, the Government shared the filtered/unfiltered reports and data in May 2021 (all cell phones), November 2021 (Taylor's email, iCloud, and computers), January 2022 (Barnett and Herrell's email, iCloud, and computers), and February 2022 (Grenkoski's iCloud and laptop). [R. 445 at 5.] Accordingly, the final disclosure of data and accompanying privilege designations occurred

---

[2] In fact, the Sixth Circuit has found—at least in the context of Rule 16 disclosures—that the Government is not obligated to organize or index discovery. *United States v. Richards*, 659 F.3d 527, 544-45 (6th Cir. 2011).

[3] One factor apparently contributing to the volume of PPM is that it contains "hundreds" of clearly non-privileged materials such as advertisements. [R. 459 at 5.] While the Court is sympathetic that this makes the review more burdensome, the account holders provide no legal support for their claim that the Government was responsible for filtering out these materials. This also signals that the Government was overprotective of the defendants' privilege. While this creates more work for the account holders now, that overprotectiveness will hopefully prevent a privilege violation caused by privileged documents mistakenly being deemed non-privileged and disclosed to the prosecution team. Also, many of the non-privileged materials can likely be quickly sorted out, given that the account holders have already identified "hundreds." *Id.* Regardless, this complaint is not legally supported.

over eight months ago.  The Court is not persuaded by the account holders' complaint that reviewing the PPM will be "time consuming" when they have had between eight and seventeen months to review it.  It is unsurprising that this eleven-defendant, twenty-seven count, complex case involves time consuming data review, but the review could have begun at least eight months ago.  Any burden now facing the account holders in complying with the discovery order is self-imposed.

The account holders also indicate that the PPM was released in a format requiring expensive e-discovery platforms.  Again, they have known this since they received the PPM at least eight months ago.  Had the formatting issue been raised earlier, perhaps the Court could have considered ordering its release in a different format.  As Judge Ingram also noted, Dr. Taylor, Dr. Herrell, and Ms. Barnett are all represented by retained counsel.  Because Dr. Grenkoski is represented by appointed counsel, Judge Ingram assured him that any application for expert services to assist in reviewing the PPM would be "promptly reviewed."  [R. 445 at 9.]  No request has been made.

The account holders repeatedly state that they are being asked to create a privilege log "for the benefit of others."  [R. 459 at 6-7.]  It is unclear how allowing the account holders to assert their own privilege over their own materials benefits their co-defendants or the Government.  It appears they believe the privilege log will help the other parties by indexing the PPM.  This is inaccurate.  The privilege log need only include the identifying characteristics of the document and the specific claimed privilege.  [R. 291 at 2-3.]  The account holders would have to provide this information regardless because, as the privilege holders, it is their burden to establish the privilege.  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).  Submitting the privilege log does not provide any benefit to the co-defendants or Government beyond the

minimum amount of information required to assert the privilege and allow the Government and co-defendants to object.

Ultimately, the account holders' objection is unfounded because they do not establish that the discovery order is contrary to law or contains clearly erroneous factual findings. Their legal argument under the Sixth Amendment is not supported by any precedent beyond general statements about the right to counsel. Further, their practical objections to the order are largely the result of their own delay. They contend the Government has had "years to process this data and to prevent this difficult situation from arising." [R. 459 at 7.] So too have the account holders. But unlike the Government, they are required to do so because they bear the burden of establishing that materials are privileged. *Dakota*, 197 F.3d at 825. It is unclear why, as "the record amply indicates[,] many months to undertake the review were wasted." [R. 445 at 10.] Whatever the reason, difficulties caused by the account holders' own delay do not warrant imposing requirements on the Government which are not supported by law. The objection is unfounded and accordingly overruled.

### III

The discovery protocol and order have been more than sufficiently litigated. The Court expects the account holders to diligently review the PPM—a process that should be ongoing given Judge Ingram's note that properly filed objections would not stay the discovery order—and file privilege logs by November 4, 2022. Accordingly, and the Court being sufficiently advised, the account holders' objection **[R. 459]** is hereby **OVERRULED**.

This the 19th day of October, 2022.

Gregory F. Van Tatenhove
United States District Judge