UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 6:21-cr-00013-GFVT-HAI-1, 2 |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ROBERT TAYLOR and | ) | **&** |
| LORI BARNETT | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on two motions to suppress by Defendants Lori Barnett and Robert Taylor.  [R. 263; R. 264.]  The motions seek to suppress the introduction of evidence from two laptops and a cell phone seized during a search of a residence located on Spring Water Lane in Knoxville, Tennessee.  These motions are broad ranging and frequently overlap.  While the motions are complex, their resolution is simple.  Because the government seized the devices pursuant to the valid Spring Water Lane warrant, Ms. Barnett's Motion to Suppress Evidence Obtained from Her Cell Phone and Laptop [**R. 263**] is **DENIED** and Dr. Taylor and Ms. Barnett's Motion to Suppress Electronic Evidence [**R. 264**] is **DENIED IN PART**.

**I**

The United States has charged eleven defendants with a total of twenty-seven counts, including money laundering, health care and wire fraud, conspiracy to unlawfully distribute controlled substances, falsification of medical records, and various other conspiracies.  [R. 1.] These charges stem from the defendants' involvement with EHC, a medical facility "designed to combat the opioid epidemic" that was founded by Dr. Robert Taylor.  [R. 1; R. 190 at 1–2.]  Ms.

Barnett worked at EHC as a registered nurse and as manager of EHC's administrative functions. [R. 190 at 2.]

On December 12, 2018, DEA Special Agent Jared Sullivan applied for a warrant to search Ms. Barnett and Dr. Taylor's residence at 223 Spring Water Lane in Knoxville, Tennessee. [R. 264-2 at 1–2.] In the affidavit supporting the application, Agent Sullivan stated that a joint investigation between the Kentucky Attorney General's Office and the DEA had provided reason to believe that Dr. Taylor and others affiliated with EHC were distributing Suboxone and other controlled substances outside of the scope of their medical practice. [R. 264-2 at 8.] The affidavit laid out the investigators' suspicions from a variety of sources, including interviews with former EHC physicians, pharmacists who filled EHC prescriptions, and current and former patients. *Id.* at 16–23, 23–26, 26–35. Magistrate Judge Bruce Guyton found probable cause supported issuing a warrant to search the Spring Water Lane residence. [R. 301-1 at 2–3.] The warrant specified several items to be seized and a procedure for search of any computer data found at the residence. *Id.* at 4–6.

On the morning of December 13, 2018, federal officials led by Agent Sullivan executed the Spring Water Lane warrant and entered Ms. Barnett and Dr. Taylor's home. [R. 190 at 2; R. 198 at 2.] There, they extensively interviewed Dr. Taylor and Ms. Barnett. [R. 263 at 2.] During the interviews, Dr. Taylor and Ms. Barnett mentioned using their phones to conduct EHC affairs. [1] *Id.* (citing [R. 263-2 at 7]). Ultimately, Agent Sullivan seized Ms. Barnett's iPhone, her Apple MacBook Pro laptop, and Dr. Taylor's Apple computer. [R. 263-2 at 8.] Ms. Barnett claims that she "never consented to the seizure of her cell phone (or laptop) and "refused to give

---

[1] The Court granted a motion to suppress Ms. Barnett's statements from this interview. [R. 236.] The Court found that the examination violated *Miranda*. *Id.* Ms. Barnett has filed a motion to suppress evidence discovered through the interview, which remains pending. [R. 266.]

the agents her password to her cell phone despite being asked multiple times." *Id.* at 3.  She also "immediately sought the return of her cell phone and laptop" and followed up in writing in January and March of 2019.  *Id.*  Four months after the search of Ms. Barnett and Dr. Taylor's home, Magistrate Judge Hanly Ingram signed warrants authorizing the government to search the contents of Ms. Barnett's laptop and cell phone.  [R. 263-1; R. 263-5.]

Ms. Barnett and Dr. Taylor have filed two motions challenging the validity of the Spring Water Lane warrant and the seizure of their devices.  The motions are often inconsistent.  In one, Ms. Barnett argues that the Spring Water Lane warrant is hyper specific in referencing a laptop rather than an iPhone.  [R. 263 at 2.]  In the other, Dr. Taylor and Ms. Barnett declare the warrant to be overbroad and insufficiently particularized to limit authorities' seizure of their possessions. [R. 264 at 17.]  Ms. Barnett moved to suppress any evidence obtained from her cell phone and laptop.  [R. 263.]  Ms. Barnett and Dr. Taylor together moved to suppress a variety of electronic evidence, including any obtained pursuant to the Spring Water Lane warrant.[2]  [R. 264.]

These motions are "broad, complicated, and at times difficult to decipher.  Many of the claims appear to have been raised purely to preserve arguments on appeal."  [R. 447 at 3.] Because the motions involve the same two warrants and suppression of overlapping evidence, this Opinion will analyze them simultaneously.  Magistrate Judge Ingram reviewed both motions and recommended denial.  [R. 384; R. 447.]  Ms. Barnett and Dr. Taylor objected to Judge Ingram's recommendations, so the Court reviews the matter *de novo*.  [R. 460; 28 U.S.C. § 636(b)(1)(C).]

---

[2] This opinion concerns the portion of Ms. Barnett and Dr. Taylor's motion that relates to the Spring Water Lane warrant.  The remainder of the arguments presented in that motion will be covered in a separate order.

**II**

The Spring Water Lane warrant is the albatross that prevents Dr. Taylor and Ms. Barnett's arguments from taking flight. They contest the validity of the warrant, claiming that it did not sufficiently limit the Government's seizure of their belongings. Ms. Barnett also asserts that the warrant did not include her iPhone. Because authorities seized her phone without a judicial permission, Ms. Barnett argues that the subsequent four-month delay in searching it offends the Fourth Amendment. However, the Spring Water Lane warrant was valid. It did cover her iPhone. So, there was no unreasonable delay. For these reasons, the Court adopts the recommended dispositions proposed by Judge Ingram and denies Ms. Barnett's Motion to Suppress [R. 263] and the related portion of Dr. Taylor and Ms. Barnett's Motion to Suppress [R. 264].

**A**

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Search warrants focus on places and things rather than persons, and the Supreme Court has clarified that the "critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555–56 (1978); *see also United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016). To establish probable cause for a search, an affidavit accompanying a warrant must demonstrate (1) "the items sought are seizable by virtue of being connected with criminal activity"; and (2) "the items will be found in

the place to be searched." *Church*, 823 F.3d at 355 (internal quotation marks and citation omitted).

As to the particularity of a warrant, a warrant "must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Savoy*, 280 F. App'x 504, 510 (6th Cr. 2008). The degree of detail "is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011) (quoting *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)). A warrant need only be as specific as "the circumstances and the nature of the alleged crime permit." *United States v. Logan*, 250 F.3d 350, 365 (6th Cir. 2001). "[A] warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a sufficient chance of finding some needles in the computer haystack." *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012).

When a defendant challenges a search made pursuant to a warrant, the reviewing court may consider only "the four corners of the affidavit" to determine whether probable cause existed. *United States v. Frazier*, 423 F.3d 526, 535 (6th Cir. 2005) (citing *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973)). The reviewing court affords great deference to an issuing judge's determination, although the issuing judge's discretion is not boundless. *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005); *United States v. Czuprynski*, 8 F.3d 1113, 1116 (6th Cir. 1993). The question is "whether there was 'a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place [to be searched].'" *United States v. Hill*, 27 F.4th 1155, 1191 (6th Cir. 2022) (quoting *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003)).

According to the affidavit behind the Spring Water Lane warrant, investigators learned from prescription monitoring databases and interviews with former patients that Kentucky residents drove to EHC's Tennessee locations, where they received high dosages of Suboxone. [R. 264-2 at 11–12.] EHC also frequently prescribed benzodiazepines such as Xanax and Klonopin along with Suboxone, a combination that investigators noted "seldom has a legitimate medical purpose." *Id.* at 13. The investigation suggested that EHC charged its Kentucky patients cash for their office visits. *Id.* at 14. Yet, EHC's patients used Medicaid benefits to pay pharmacies for the prescriptions because several EHC doctors were approved providers under the Kentucky Medicaid program. *Id.* Based on state records, investigators learned that two of EHC's doctors were responsible for the second-highest and sixth-highest Suboxone prescriptions to Kentucky Medicaid participants. *Id.*

The affidavit also revealed several EHC business practices that investigators found suspicious. To list a few, Dr. Taylor allegedly ordered an EHC doctor to endorse physical examinations performed by non-medical employees. *Id.* at 19–20. Ms. Barnett, despite not being a physician, allegedly had exclusive control over discharging patients who failed to comply with EHC's requirements. *Id.* at 18–19. Other EHC doctors identified Dr. Taylor "as the owner of EHC and his girlfriend, Lori Barnett, as a director/manager at EHC." *Id.* at 76. Dr. Taylor transferred more than $16,800,000 of EHC proceeds into his personal accounts. *Id.*

The affidavit alleged connections between these unusual business practices and the Spring Water Lane residence. The Tennessee Secretary of State website listed the Spring Water Lane residence as the mailing address for EHC's registered agent. *Id.* at 76. The affidavit describes statements by Dr. Taylor that he could remotely monitor EHC activities via security cameras. *Id.* at 77. He also kept large amounts of cash from EHC at his personal residence. *Id.*

Moreover, EHC stored patient records and other data digitally with Salesforce, a third-party company. *Id.* Using IP addresses, investigators alleged that Dr. Taylor accessed these digital records from the Spring Water Lane residence. *Id.* at 78. The IP address through which Dr. Taylor accessed the records was "subscribed to Lori Barnett at [the Spring Water Lane Residence]." *Id.* Investigators also had reason to believe "that Dr. Taylor and/or Lori Barnett [were] using multiple logins to access the EHC server from a computer located at [the Spring Water Lane Residence]." *Id.* at 79. A machine using "Mac OSX" accessed the EHC server from the Spring Water Lane Residence. *Id.* Investigators believed that work-related documents, financial documents, and financial assets would be located at the Spring Water Lane residence. *Id.*

Based on the probable cause within affidavit, Judge Guyton issued a warrant to search the Spring Water Lane residence. [R. 264-1.] The warrant specified that "[t]he items to be seized from the premises . . . constitute evidence, fruits, and/or instrumentalities of violations of 21 U.S.C. §§ 846 and 841, and 18 U.S.C. §§ 1035 and 1347," which are statutes prohibiting the unauthorized distribution of controlled substances, conspiracy to distribute controlled substances, and fraud relating to payment for health care benefits. *Id.* at 2. Appended to this requirement, a list itemized the objects to be seized, including "A computer (laptop, desktop, or tablet) being used for EHC business activities . . . ." *Id.* The list went on to include several items related to EHC activities, such as "records or documents referring to EHC or an EHC patient," "[f]inancial records," and "communications regarding the diversion of controlled substances or defrauding a health care benefit program . . . ." *Id.*

In a separate attachment, the warrant established a procedure for searching computer data for evidence of the alleged crimes. *Id.* at 3. It required law enforcement to undertake an initial

search of the data at the residence. *Id.* If the data could not be searched on site in a reasonable

amount of time, it permitted an off-site search. *Id.* To do so, the warrant permitted the

computers to be seized and transported to a law enforcement laboratory. *Id.* There, computer

personnel could "examine all of the data contained in the computer equipment and storage

devices . . . to . . . determine whether the data falls within the items to be seized." *Id.*

## B

Dr. Taylor and Ms. Barnett have challenged the Spring Water Lane Warrant on multiple

bases, including a broad challenge to its particularity. They have moved this Court to suppress

evidence pertaining to "seizures and searches of seized electronic devices pursuant to warrants

that failed to particularize the electronic records to be searched . . . ." [R. 264 at 2.] As part of

this wide-ranging motion, Dr. Taylor and Ms. Barnett argue that the Spring Water Lane warrant

violated the Fourth Amendment by requiring "the wholesale production of information akin to

[a] general warrant[.]" *Id.* at 18. They argue that "the federal agents requested and received

authority to seize materials without a demonstrated nexus to criminal activity." *Id.* at 22.

The motion implicates two issues: the seizure of the devices themselves and the

subsequent search of the data that they contained. First, Dr. Taylor and Ms. Barnett claim that

the "probable cause to search the residence contained limited information with respect to

electronic devices." *Id.* at 21. They argue that the warrant failed to "establish probable cause to

seize every electronic device and cellphone . . . ." *Id.* at 20. Specifically, they complain that

"[n]o allegations were made with respect to cell phones." *Id.* at 21. Next, they contend that the

"warrant itself violated the Fourth Amendment if it authorized the government to 'examine all of

the data' without limit."[3] *Id.* at 20. After the United States responded to their motion, Dr.

---

[3] Dr. Taylor has also challenged his disclosure of the passwords for his electronic devices to government agents. [R. 264 at 20.] Dr. Taylor alleges that the execution of the Spring Water Lane warrant violated the Fifth and Sixth

Taylor and Ms. Barnett clarified that they do not challenge whether Judge Guyton had probable cause to issue the Spring Water Lane warrant, but rather "whether any probable cause was coextensive with the seized electronic devices." [R. 325 at 7.]

## 1

Magistrate Judge Ingram interpreted the Dr. Taylor and Ms. Barnett's motion as questioning "'whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take' and 'whether the category as specified is too broad in the sense that it includes items that should not be seized.'" [R. 447 at 12 (quoting R. 325 at 7).] These problems reference two issues implicated by challenges to particularity. *See United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011).

As to the first problem, Judge Ingram found that the Spring Water Lane warrant contained sufficient guidance for investigators because it limited the computers to be seized to machines "that contain or constitute 'evidence, fruits, and/or instrumentalities of' the alleged crimes . . . ." [R. 447 at 13.] Then, Judge Ingram concluded that the warrant was not overbroad. Contrary to the Dr. Taylor and Ms. Barnett's argument that the warrant was circular, Judge Ingram found it to precisely allow "the search and seizure [of] computers *used for EHC business* and the subsequent search of the *contents* of those devices . . . for the retrieval of evidence, fruits, and instrumentalities of the charged crimes." *Id.* at 14.

---

Amendment by failing to "authorize the government to compel Dr. Taylor to disclose the passwords to those devices . . . ." *Id.* As authority for this allegation, Dr. Taylor provides a cursory citation to *Massiah v. United States*, 377 U.S. 201 (1964). Dr. Taylor makes no further attempt to articulate how his allegedly compelled disclosure of his password offends either the Fifth or Sixth Amendment. Yet "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Because Dr. Taylor failed to adequately consider this argument, the Court will address it no further.

Ms. Barnett and Dr. Taylor object to Judge Ingram's recommendation regarding the residential warrants in full. [R. 460 at 7–8.] They complain that Judge Ingram rejected their argument that the warrant lacked specificity because it did not contemplate a particular computer known to be at the Spring Water Lane residence. *Id.* Judge Ingram based his conclusion that the warrant was sufficiently specific, in part, on "'common knowledge' that 'individuals who owned and managed the business would use computers in doing so . . . .'" *Id.* (quoting [R. 447 at 14]). Dr. Taylor and Ms. Barnett also reiterated their challenge to the warrant's alleged circularity. [4] *Id.* at 7.

The Court agrees. The affidavit's information regarding multiple logins to Salesforce provided sufficient probable cause to justify seizing multiple electronic devices. Judge Guyton based the Spring Water Lane warrant on an affidavit that alleged that Dr. Taylor and Ms. Barnett accessed remotely stored EHC data using multiple logins from their residence. The warrant then authorized the seizure of "[a] computer . . . being used for EHC business activities." [R. 261-1 at 2.] While Dr. Taylor and Ms. Barnett contend that the warrant supported, at best, the seizure of a particular computer, probable cause existed to justify the seizure of multiple machines because more than one login accessed the IP address identified in the warrant. Viewed from Judge Guyton's position, these logins could have occurred on multiple machines.

Moreover, the parenthetical list of a "(laptop, desktop, or tablet)" in the warrant is additional justification that Judge Guyton intended the warrant to authorize seizure of any electronic devices used to access EHC records. Read together, the reference to "[a] computer" that is a "(laptop, desktop, or tablet)" that is "being used for EHC business activities" would

---

[4] The United States filed a response to Dr. Taylor and Ms. Barnett's objections. [R. 485.] Because the rules of procedure do not permit a response in this scenario, the Court disregards the Government's pleading. *Compare* Fed. R. Crim. P. 59(b)(2) *with* Fed. R. Civ. P. 72(b)(2). Neither did Judge Ingram's Report and Recommendation authorize a response.

authorize agents to seize some unknown machine or machines that had been used for EHC purposes. The Court reads the language as intended to be inclusive rather than exclusive, particularly given Judge Guyton's knowledge that Dr. Taylor and Ms. Barnett had used multiple logins. To read the reference to "[a] computer" as strictly meaning one machine would be to require more specificity than the circumstances facing Judge Guyton allowed. *See Logan*, 250 F.3d at 365. The IP addresses and digital analysis contained within the affidavit established a substantial basis to believe that Dr. Taylor and Ms. Barnett kept a device or devices at Spring Water Lane to use for EHC business. *See Hill*, 27 F.4th at 1191. And, the search warrant provided sufficiently restrictive guidance that investigators were to seize only the devices in the residence that were used for EHC business.

As to the argument that the warrant was circular, Ms. Barnett and Dr. Taylor have engaged in a tortured attempt to create circularity where there is none. The warrant contained one section listing the items to be seized and another detailing the procedure for seizure. Dr. Taylor and Ms. Barnett read the procedure section's authorization to "examine all of the data contained in the computer equipment . . . to . . . determine whether the data falls within the items to be seized" as connecting to the items for seizure section's reference to "a computer." [R. 460 at 7.] Thus, they argue that the warrant authorized the Government to seize computers and later search them to see if they contained computers. *Id.*

This reasoning implies that Judge Guyton, when issuing the warrant, believed that computers function as the equivalent of Russian nesting dolls; that inside of a computer, one might find another computer. This is not the way that computers work, and the Court declines to read this implication into Judge Guyton's warrant. Instead, the better reading is to track the real-world functioning of computers and to conclude that Judge Guyton expected investigators to find

11

data in a computer. Particularly, he expected investigators to find data that would "constitute evidence, fruits, and/or instrumentalities of" the unauthorized distribution of controlled substances, conspiracy to distribute controlled substances, and fraud relating to payment for health care benefits. This reading connects the procedure section of the warrant to the other items enumerated for seizure, which include EHC records and documents, financial records, and other items that might reasonably be found in a computer's data.[5]

The Court adopts Judge Ingram's findings. The Spring Water Lane warrant directed the Government to seize computers from Dr. Taylor and Ms. Barnett's residence. It authorized search of the computers for data related to the alleged crimes. The affidavit supporting the warrant established a high probability of finding information related to EHC activity because it identified multiple logins to that data from the residence. "[A] warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a sufficient chance of finding some needles in the computer haystack." *See Evers*, 669 F.3d at 653. This warrant specifically identified EHC financial, patient, and communication documents within the digital haystack. Therefore, Judge Guyton restricted the Government's search and seizure of data such that the warrant was neither unreasonable nor overbroad.

---

[5] In the Defendants' objections to Judge Ingram's recommendation, counsel included a version of the list of items for seizure that omits all the other items below the reference to "[a] computer." [R. 460 at 7.] This appears to be an attempt to bolster their argument that the two attachments to the warrant are circular. While the Court appreciates counsel's argument, there is a line between zealous advocacy and advocacy that has the result of misleading the Court.

**2**

Ms. Barnett and Dr. Taylor have also argued, in two motions, that the Spring Water Lane warrant did not authorize the seizure of Ms. Barnett's cell phone.[6]  In one series of pleadings, they argue that the warrant failed to "establish probable cause to seize every electronic device and cellphone . . . ."  [R. 264 at 20.]  Specifically, they complain that "[n]o allegations were made with respect to cell phones.  *Id.* at 21.

In the other motion, Ms. Barnett asks the Court to suppress all evidence derived from searches of her cell phone and laptop.[7]  [R. 263 at 1.]  This time, her theory is that the Government waited four months after seizing her devices to obtain a warrant to search them.  *Id.* at 4.  The argument is premised on Ms. Barnett's conclusion that her iPhone did not fall within the scope of the Spring Water Lane warrant.[8]  Assuming that the Government seized the phone merely based on probable cause obtained during the search rather than pursuant to the existing warrant, Ms. Barnett cites to a Sixth Circuit decision that cautioned "that 'even with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable.'"  [R. 263 at 5 (quoting *United States v. Respress*, 9 F.3d 483, 487–88 (6th Cir. 1993).]  Ms. Barnett contends that the Government waited four months to obtain a warrant to search the contents of her devices, constituting an unreasonable delay.  *Id.* at 3.  As a remedy for the delay, Ms. Barnett asks the Court to suppress any evidence

---

[6] Ms. Barnett and Dr. Taylor styled one motion as a Joint Motion to Suppress Electronic Evidence.  [R. 264.]  Ms. Barnett titled the other motion as a Motion to Suppress Evidence Obtained from her Cell Phone and Laptop. [R. 263.]  Through the course of filing responsive pleadings to the United States' filings and to Magistrate Judge Ingram's recommended disposition, Ms. Barnett and Dr. Taylor interweave several related challenges to the Spring Water Lane warrant's applicability to the seizure of Ms. Barnett's cell phone.  Therefore, this opinion considers the arguments collectively rather than strictly in the order presented by the parties.

[7] While Ms. Barnett's motion to suppress asks the Court to suppress evidence derived from both her laptop and her cellphone, this Section of the opinion will only discuss her iPhone.  [R. 263 at 1.]  As discussed at length above, the Spring Water Lane warrant permitted the Government to seize and to search her laptop.

[8] [*See* R. 330 at 3 (making the case against the Spring Water Lane warrant in reply to the Government's position that the warrant covered the initial seizure of the phone).]

obtained from the devices, relying on cases from the Fourth and Seventh Circuits to suggest that

suppression is an appropriate remedy. [R. 263 at 4 (citing *United States v. Pratt*, 915 F.3d 266,

273 (4th Cir. 2019) and *United States v. Burgard*, 675 F.3d 1029, 1035 (7th Cir. 2012)).][9]

This argument misses the mark on both fronts. Nevertheless, the Court will consider both

the applicability of the Spring Water Lane warrant to the iPhone and the unreasonable delay

contention because Ms. Barnett objects to Judge Ingram's recommendations as to both issues.

**a**

The Government submits that suppression is inappropriate because law enforcement

officers seized Ms. Barnett's cell phone pursuant to the Spring Water Lane warrant. [R. 301 at

1.] Judge Ingram agrees and points to four provisions of the warrant that covered Ms. Barnett's

iPhone. [R. 384 at 4–10.] Ms. Barnett objects to all four reasons, so the Court reviews *de

novo*.[10] [R. 417 at 4–13; 28 U.S.C. § 636(b)(1)(C).]

**i**

First, Judge Ingram determined that Ms. Barnett's iPhone qualified as an instrumentality

of the suspected crimes. [R. 384 at 5.] The warrant's list of items for seizure included

"evidence, fruits, and/or instrumentalities of violations of [the suspected drug and fraud crimes.]"

*Id.*; [R. 301-1 at 4.] Judge Ingram provided a standard definition of the term instrumentality,

---

[9] Ms. Barnett's motion is riddled with citations to decisions from sister circuits to support her argument that
suppression is a remedy for an unreasonable delay. [*See also* R. 263 at 12 (citing *United States v. Song Ja Cha*, 597
F.3d 995, 1006 (9th Cir. 2010) and *United States v. Wilkins*, 538 F.3d 49, 95–96 (D.D.C. 2021)).] This reliance on
non-binding authority is likely because the Sixth Circuit precedent that she cites on this issue is inapposite to her
argument. *See United States v. Respress*, 9 F.3d 483, 486 (6th Cir. 1993) (noting the longstanding validity of seizing
an item based on probable cause and then obtaining a warrant to search its contents and finding no unreasonable
delay). Ms. Barnett's attempts to bolster her use of out of circuit cases with references to United States Supreme
Court decisions fail because the cases are not factually distinguishable. [*See e.g.*, R. 263 at 4 (citing *Brigham City v.
Stuart*, 547 U.S. 398 (2006) (a decision regarding a warrantless entry into a home).]
[10] The Government also filed a response to these objections. [R. 448.] Again, the Court disregards this pleading
because it is not authorized by the rules of procedure. *Compare* Fed. R. Crim. P. 59(b)(2), *with* Fed. R. Civ. P.
72(b)(2). Neither did Judge Ingram's Report and Recommendation authorize a response.

which "is [a] thing used to achieve an end or purpose." [R. 384 at 5 citing *Instrumentality*, Black's Law Dictionary (11th ed. 2019).] Judge Ingram also cited two cases that determined that cell phones can qualify as instrumentalities of criminal activity. *Id.* at 6 (citing *United States v. Coleman*, 909 F.3d 925, 931 (8th Cir. 2018) and *United States v. Skinner*, No. 3:19-cr-19, 2021 WL 1725543, at * 16 (E.D. Va. Apr. 29, 2021)). Because officers had reason to believe that Barnett used her cell phone to scan and email EHC documents, Judge Ingram determined that the officers could have validly seized her iPhone as an item "used to achieve" EHC purposes. *Id.* at 5.

Ms. Barnett disagrees. She argues that Judge Ingram's construction renders the warrant overbroad because "virtually all crimes can be committed or facilitated through communication by cell phone." [R. 417 at 4 (quoting *United States v. Norwood*, 989 F. Supp. 2d 570, 576 (E.D. Mich. 2013)).] Ms. Barnett also feels that the authority cited by Judge Ingram is incorrect. *Id.* at 5. Instead, Ms. Barnett points the Court to a line of cases that permit seizure of items "not specifically listed in the search warrant if they are 'reasonably related to the offense which formed the basis for the search warrant.'" *Id.* at 6 (quoting *United States v. Brown*, 49 F.3d 1162, 1169 (6th Cir. 1995)).

She then cites a Fourth Circuit decision to propose that warrants that broadly authorize seizure of evidence of a crime are valid if they relate to "evidence of a particular crime" rather than "general criminal activity." *Id.* at 6. That decision holds that "a warrant authorizing a search for evidence relating to 'a broad criminal statute or general criminal activity' such as 'wire fraud,' 'fraud,' 'conspiracy,' or 'tax evasion,' is overbroad because it 'provides no readily ascertainable guidelines for the executing officers as to what items to seize.' In contrast, a warrant authorizing a search for evidence relating to 'a specific illegal activity,' such as

15

'narcotics,' or 'theft of fur coats' is sufficiently particular." *United States v. Dickerson*, 166 F.3d 667, 694 (4th Cir. 1999) (quoting *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992)).

Even if Fourth Circuit precedent controlled this Court, Ms. Barnett's argument would be unavailing. The Spring Water Lane warrant did not authorize a broad search for all criminal activity. Nor did it authorize a search for any evidence relating to a broad type of criminal activity, such as fraud. Rather, it permitted authorities to search for evidence of a specific criminal act: the alleged fraudulent scheme at EHC.

The warrant specified that "[t]he items to be seized from the premises . . . constitute evidence, fruits, and/or instrumentalities of [distribution of controlled substances and health care fraud] . . . ." [R. 264-1 at 2.] After the reference to instrumentalities of the alleged drug and fraud crimes, a list gave details of objects to be seized with the constant refrain of "being used for EHC business activities . . . ." *Id.* This provided clear guideline for the officers that the instrumentalities that they could seize were only those that might have been used for EHC and relate to the alleged crimes.

Moreover, the affidavit alludes to multiple logins to EHC data from Spring Water Lane. Multiple devices at Spring Water Lane could have accessed EHC's online records. Ms. Taylor's iPhone would be just such a device. In this sense, the cell phone could have been used to "achieve the purpose" of accessing EHC records, so it was properly an instrumentality of the alleged crimes.

### ii

Judge Ingram also found that the warrant justified seizure of Ms. Barnett's cell phone because it enumerated a "computer (laptop desktop, or tablet) being used for EHC activities' as an item to be seized. [R. 384 at 7; R. 264-1 at 2.] Judge Ingram alluded to authority that

16

"[m]odern cellphones are 'in fact minicomputers that also happen to have the capacity to be used as a telephone.'"  [R. 384 at 7 (quoting *Riley v. California*, 573 U.S. 373, 393 (2014)).]  Judge Ingram read the warrant "as providing a non-exhaustive list of examples of types of computers." [R. 384 at 7.]

Ms. Barnett objects to this determination, arguing that warrants must describe items to be seized with particularity to "prevent[] the seizure of one thing under a warrant describing another."  [R. 417 at 7 (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)).]  Ms. Barnett argues that "the description of the things to be seized was not 'as specific as the circumstances and the nature of the activity under investigation permit[ted].'"  *Id.* (quoting *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999)).  Ms. Barnett also disagreed with Judge Ingram's determination that the warrant provided a non-exhaustive list of types of computers that were eligible to be seized.  *Id.* at 7–8.  She points to the lack of words indicative of ambiguity in the list, like "'for example,' 'such as,' or 'including' . . . ."  *Id.*  She also notes that other items listed did use this type of language.  Additionally, Ms. Barnett claims that the affidavit failed to provide probable cause for the warrant to cover her phone because Agent Sullivan "never once mentioned cell phones is his affidavit in support of the warrant. . . . The affidavit's main focus was on the Mac computers alleged to be used in the residence to access EHC server."  *Id.* at 8.

The Court agrees with Judge Ingram.  The warrant was as specific as circumstances allowed, given that investigators had reason to believe that an unknown number of devices had been used to access EHC records from Spring Valley Lane.  As discussed above, the Court reads the parenthetical list of a "(laptop, desktop, or tablet)" as inclusive rather than exclusive.  The phone fits the list because it is a computer that could have accessed the remotely stored records.

17

Ms. Barnett has also objected to Judge Ingram's failure "to discuss affiant S.A. Sullivan's conduct in relation to whether a computer included a cell phone." [R. 417 at 8.] Her objection is premised on Agent Sullivan's affidavit in support of the second search warrant covering Ms. Barnett's phone. *Id.* at 9. Specifically, Ms. Barnett complains that Agent Sullivan included, in the second affidavit, statements obtained from Dr. Taylor and Ms. Barnett during the search of Spring Water Lane and statements obtained from a subsequent search of co-Defendant Dr. Herrell's phone. *Id.* at 8–9. Ms. Barnett suggests that Agent Sullivan's conduct is relevant "to whether a computer included a cell phone." *Id.* at 8.

This objection misapprehends the scope of this Court's review of the Spring Water Lane Warrant. In his recommended disposition, Judge Ingram determined that the word computer in the Spring Water Lane warrant included cell phones after reviewing the Spring Water Lane warrant itself, not by considering the probable cause supporting a later warrant. When a defendant challenges a search made pursuant to a warrant, the reviewing court may only consider "the four corners of the affidavit" to determine whether probable cause existed. *Frazier*, 423 F.3d at 535 (citing *Hatcher*, 473 F.2d at 324). Thus, Agent Sullivan's conduct during the search and his subsequent application for a second affidavit are irrelevant to determining the scope of the term computer as used in the Spring Water Lane warrant.

Finally, Ms. Barnett points the Court to two authorities that discuss the unique privacy concerns implicated by cell phones. [R. 417 at 9.] In *Riley v. California*, the United States Supreme Court discussed the search and seizure of cell phones undertaken incident to a defendant's arrest. *Riley v. California*, 573 U.S. 373, 382 (2014). As the Government seized Ms. Barnett's phone pursuant to a warrant, the concerns implicated in that case are not present for Ms. Barnett. *See id.* at 385 (quoting *Wyoming v. Houghton*, 526 U.S. 295 (1999)) ("we

18

generally determine whether to exempt a given type of search from the warrant requirement 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests.'").

Ms. Barnett's reference to *Burns v. United States* comes closer to hitting the mark.  In *Burns*, the D.C. Circuit Court of Appeals found that a warrant authorizing the search of a murder defendant's cell phone lacked sufficient probable cause and particularity.  *Burns v. United States*, 235 A.3d 758, 774 (D.C. 2020).  The *Burns* opinion thoughtfully explores some of the unique challenges involving warrants to search cell phones.

Because of the massive amount and wide-ranging types of data on modern phones, there is a risk that warrants will not "be carefully tailored to [their] justifications, and [that they] will . . . take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."  *Id.* at 772 (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).  Thus, it is critical that warrants to search cell phones are properly particularized so that "the issuing judge . . . decides 'what is to be taken,' and 'nothing is left to the discretion of the officer executing [the warrant],' making 'general searches . . . impossible.'"  *Id.* (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)).  Without clear delineation of the items that may be searched, the Government has carte blanche to explore data that represents the entire sum of a person's life. *See id.* at 773 (asserting that a broad search of a cell phone potentially invades more personal privacy than an intrusion into one's home).  The *Burns* court therefore concluded that a warrant to search a modern phone "must specify the particular items of evidence to be searched for and seized from the phone and be strictly limited to the time period and information or other data for

which probable cause has been properly established . . . in the warrant's supporting affidavit." *Id.*

The facts set forth in the *Burns* affidavit established probable cause to believe that Mr. Burns's cell phone contained text messages between Mr. Burns and the murder victim on the day of his death. *Id.* The affidavit also established probable cause to support a search of the GPS tracking on his phone on that day. *Id.* But, it did not provide reason to believe that other information on the phone would be relevant to the murder. *Id.* Ultimately, the *Burns* court found reversible error in the trial court's failure to suppress the introduction of incriminating internet searches, such as "Are you capable of killing your best friend?," that occurred several days prior to the murder. *Id.* at 770. Thus, police seized data on Mr. Burns's phone that was not coextensive with "the three narrow items of evidence for which the affidavits established probable cause . . . ." *Id.* at 774–75.

Ms. Barnett fails to develop an argument as to how the seizure of her cell phone is the same as issues in *Burns*. Far from authorizing a general search of her cell phone, the Spring Water Lane warrant detailed specific items related to the EHC enterprise that the Government expected to find on electronic devices at the residence, such as EHC patient records and financial documents. Authorities had reason to believe that they would find these items on an electronic device owned by Ms. Barnett. The affidavit established that she managed EHC. [R. 264-2 at 11–12.] It showed that devices at Spring Water Lane accessed remotely stored EHC data. *Id.* at 78–79. And, it showed that the channels through which the devices accessed EHC data were subscribed to Ms. Barnett. *Id.* at 78. Whereas the *Burns* warrant was supported by probable cause relating only to text messages and GPS tracking data from a particular day, the affidavit

20

for the Spring Valley Lane provided reason to believe that a treasure trove of EHC data from a large timespan would be on Ms. Barnett's iPhone.

Judge Ingram correctly determined that Ms. Barnett's iPhone could be regarded as a computer under the Spring Water Lane warrant.

### iii

As a third basis for recommending that the Court deny Ms. Barnett's motion to suppress, Judge Ingram found that her iPhone could have contained documents that the Spring Water Lane warrant authorized for seizure. [R. 384 at 8.] Specifically, Judge Ingram found that the phone could have contained:

> [p]ersonal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes and documents, and other items which reflect names, addresses, telephone numbers, and communications regarding the diversion of controlled substances or defrauding a health care benefit program by Robert Taylor and other practitioners, employees, or contractors at EHC locations in Jacksboro, TN or Harriman, TN . . . .

*Id.* at 9 (quoting [R. 301-1 at 4]). Judge Ingram stated that it is common knowledge that phones contain this type of information. *Id.* Moreover, Ms. Barnett stated that she used her phone to email and text the managers at EHC. *Id.* On that basis, "it would be reasonable for [Agent Sullivan] to conclude that the phone contained the type of evidence, particularly 'communications,' described in this paragraph." *Id.*

Ms. Barnett objects to this proposed finding. [R. 417 at 10–11.] She claims Judge Ingram's use of her statement about using her phone for work to be particularly odious. *See id.* First, she argues "Ms. Barnett's statement that she used her phone to email and texted [sic] occasionally the managers at EHC does not mean that she communicated regarding diversion of controlled substances or defrauding a health care benefit program. EHC was a legitimate

21

Tennessee Licensed Office Based Opiate Treatment Facility . . . ."[11]  *Id.* at 11.  Ms. Barnett questions whether Agent Sullivan "actually concluded" that she had used her phone to commit the crimes at issue.  *Id.*  In Ms. Barnett's view, Agent Sullivan's subjective belief at the time he executed the Spring Water Lane warrant is relevant because "the agent executing the search warrant . . . was also the affiant" to the supporting affidavit.  *Id.*

Ms. Barnett's focus on Agent Sullivan's use of her statements made at the time of the search is unwarranted.  As mentioned earlier, a reviewing court may consider only "the four corners of the affidavit" to determine whether probable cause existed.  *Frazier*, 423 F.3d at 535 (citing *Hatcher*, 473 F.2d at 324).  Thus, Agent Sullivan's conduct during the search and Ms. Barnett's statements are not immediately relevant.

Instead, the question is whether the affidavit established probable cause that Agent Sullivan would find "[p]ersonal telephone books, address books, telephone bills . . . and other items which reflect . . . communications regarding the diversion of controlled substances or defrauding a health care benefit program by Robert Taylor . . . ."  [R. 301-1 at 4.]  And the answer is yes.  As discussed at length, remote servers stored EHC data through Salesforce.  Ms. Barnett could have used her phone to login and access that information.

So, Judge Ingram's determination that Ms. Barnett's phone could have contained other items specified in the warrant is correct.

---

[11] Ms. Barnett also filed an objection to Judge Ingram's description of EHC.  [R. 417 at 2.]  Judge Ingram described Agent Sullivan's investigation as an "investigation of a multi-site pain clinic (Express Health Clinic, or 'EHC') on suspicions of pain-pill diversion."  [R. 384 at 1.]  Ms. Barnett claims that EHC was more accurately "a Tennessee State Licensed Office Based Opiate Treatment Facility ('OBT'), and the physicians primarily prescribed Buprenorphine."  [R. 417 at 2.]  Because the technical designation of EHC is immaterial to these motions, Ms. Barnett's objection is noted but overruled.

**iv**

Finally, Judge Ingram found that the search procedure for computer data set forth in the Spring Water Lane warrant also indicates that Ms. Barnett's cell phone could be seized. [R. 384 at 8–10.] In support, Judge Ingram provided three reasons. First, Judge Ingram explained that "agents were authorized to search for records, documents, and materials 'created, modified or stored in any form, including, but not limited to, electronic or computer data.'" *Id.* at 8–9 (quoting [R. 301-1 at 5]). Judge Ingram determined that an iPhone would be expected to contain relevant electronic records. *Id.* at 9.

Second, Judge Ingram noted that the procedure authorized agents to "seize and make an initial review of any 'computer equipment and storage devices.'" *Id.* (quoting [R. 301-1 at 5]). Judge Ingram then made a commonsense determination that smartphones are a type of computer and would function as storage devices for various types of documents. *Id.*

Third, Judge Ingram looked to the procedure section of the warrant, which authorized the seizure and search of:

a. Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

b. Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c. Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants[.]

*Id.* (quoting [R. 301-1 at 6]). Again, Judge Ingram noted that smartphones are functionally identical to computers and that they are "capable of being used to commit, further, or store

evidence." *Id.* Moreover "[s]martphones are electronic storage devices capable of storing data." *Id.*

Accordingly, Judge Ingram read the procedure section as augmenting the connection between the list of items to be seized and Ms. Barnett's iPhone. *Id.* at 9–10. The numerous ways in which her iPhone fit the procedure strengthened his conclusion that her iPhone could qualify as an instrumentality of the charged crimes, a computer, or one of the various types of communications documents. *Id.* To Judge Ingram, Agent Sullivan could validly seize the phone the moment Ms. Barnett told him that she used it for EHC purposes. *Id.* at 10.

Ms. Barnett objects to Judge Ingram's interpretation of the procedure section of the warrant. [R. 417 11–13.] In Ms. Barnett's view, Judge Ingram should not have resorted to the procedure section at all because the description of the items to be seized was insufficiently specific. *Id.* at 11–12 (citing *Ables*, 167 F.3d at 103). Ms. Barnett renews her complaint that the warrant did not explicitly reference the word cellphone as an item to be seized. *Id.* at 12. She also cites to a case from the Western District of Tennessee that suppressed evidence found in a safety deposit box because the allegations in the affidavit contained no reason to believe that evidence would be found in the box. *Id.* (citing *United States v. Ogden*, No. 06-cr-20033, 2008 WL 2247074, *10 (W.D. Tenn. May 28, 2008)). She then renews her claim that Agent Sullivan seized her phone pursuant to probable cause obtained from her interview at Spring Water Lane. *Id.* at 12–13.

Again, Ms. Barnett points to an issue that is unavailing. As established, Ms. Barnett's statements to Agent Sullivan are irrelevant in determining whether the Spring Water Lane warrant covered her iPhone. Rather, the Court looks to the warrant itself and to the four corners of the affidavit. The affidavit established ample reason for Judge Guyton to believe that a

24

smartphone could have been used at Spring Water Lane to access digitally stored EHC records. Accordingly, Ms. Barnett's citation to *United States v. Ogden* is inapposite. Unlike the safety deposit box in that case, Agent Sullivan's affidavit established probable cause to believe that devices capable of connecting to the internet had accessed EHC documents related to the charged crimes.

Moreover, Judge Guyton then drafted the procedure portion of the warrant in a manner to facilitate review of electronic devices. His decision to authorize the review of such broad types of storage as "[a]ny magnetic, electronic, or optical storage device capable of storing data" was as specific as reasonably possible given that the connection to Spring Water Lane involved multiple logins and, therefore, potentially multiple, unknown devices. The Court reads Judge Guyton's procedure in the Spring Water Lane warrant as enabling the Government to seize the unknown devices used to access EHC's data while cabining the later review of that data to only those documents relating to EHC.

The Court agrees with Judge Ingram. The procedure section of the warrant strengthens its applicability to Ms. Barnett's iPhone.

**b**

All this spilled ink over whether the Spring Water Lane warrant covered Ms. Barnett's iPhone is a result of her original motion to suppress the introduction of data derived from her smartphone.[12] [R. 263.] That motion asks for suppression because the Government waited four

---

[12] Ms. Barnett's motion also sought to suppress data obtained from her laptop. [R. 263.] In his recommendation, Judge Ingram opined that "Barnett's reply focuses mostly on the iPhone as being outside the scope of the residential warrant. And for good reason. Attachment F specifically names a 'laptop' computer as among the 'evidence, fruits, and/or instrumentalities' to be seized during the search. *Id.* (quoting [R. 301-1 at 4]). Nevertheless, Ms. Barnett also objected to Judge Ingram's finding that there was no unreasonable delay in returning her laptop. [R. 417 at 13.] The Court agrees with Judge Ingram that the Spring Water Lane warrant explicitly authorized seizure of Ms. Barnett's laptop, as discussed at length above. Because the Court finds that both the laptop and the cellphone were covered by the Spring Water Lane warrant, the Court refers to the devices generally in discussing Ms. Barnett's arguments regarding unreasonable delay.

months after seizing her devices to obtain a warrant to search them. *Id.* at 4. Ms. Barnett argues this delay was unreasonable. *Id.* at 3. The Sixth Circuit has cautioned "that 'even with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable.'" *United States v. Respress*, 9 F.3d 483, 487–88 (6th Cir. 1993).

As the Government's response points out, the motion's "entire foundation is based on the incorrect premise that the iPhone and MacBook Pro were initially seized without a warrant . . . ." [R. 301 at 1.] In implicit acknowledgment of this flaw, Ms. Barnett's reply brief attempts to argue that the Spring Water Lane warrant did not cover her iPhone. [R. 330 at 3.] Judge Ingram's detailed consideration of the cell phone followed. [R. 384 at 5–10.] After objecting to Judge Ingram's findings regarding the Spring Water Lane warrant, Ms. Barnett returns to her argument regarding unreasonable delay. [R. 417 at 13–15.]

In his recommended disposition, Judge Ingram points out that Ms. Barnett's allusions to authority involve markedly different facts than are present here. [R. 384 at 10.] The cases that she cites regarding unreasonable delay involve seizures that were originally warrantless. *Id.* Judge Ingram reiterates that the Government seized Ms. Barnett's iPhone under the Spring Water Lane warrant. *Id.* Therefore, the issue is whether any delay following the warrant-based seizure offends the Fourth Amendment. *Id.*

Judge Ingram then explored decisions discussing the permissible duration in which authorities may retain seized electronic devices to confirm that they contain evidence covered by a warrant. *Id.* at 10–11. These authorities hold that "delays of 10 months, or more, in reviewing electronic data are not *per se* unreasonable, even when the government does not furnish a basis for the delay in searching electronic data. *United States v. Estime*, No. 19-cr-711-NSR. 2020

26

WL 6075554, at *14 (S.D.N.Y. Oct. 14, 2020). Judge Ingram determined that "the 'general rule' is that the government 'may retain property bearing evidence until after criminal proceedings have terminated.'" [R.384 at 11 (quoting *United States v. Channon*, No. cr 13-966 JCH, 2014 WL 12788057, at *9 (D.N.M. Sept. 22, 2014)).] This principle is based on a Tenth Circuit decision that stated that "[a]fter the government executed its first search warrant and found incriminating evidence, it was presumptively entitled to retain the computer through trial." *United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013).

Judge Ingram reviewed the timeline of the Government's seizure of Ms. Barnett's devices. Authorities took her phone and laptop on December 13, 2018, pursuant to the Spring Water Lane warrant. [R. 384 at 10.] Agent Sullivan applied for a second warrant to search the devices on April 24, 2019. *Id.* And officials extracted data from the phone from June 11–12, 2019. *Id.* The Government returned the devices to Ms. Barnett in February and December of 2020, respectively. *Id.* Given the general rule that authorities may retain a computer through trial and that Ms. Barnett's prosecution is ongoing, Judge Ingram found no unreasonable delay. *Id.* at 12.

Ms. Barnett objects to Judge Ingram's opinion and to his application of the general rule regarding delay in returning evidence. [R. 417 at 13.] She also returns to her premise that the Government "waited four months to seek a search warrant" for the devices. *Id.* at 14. Ms. Barnett concedes that if the physical phone and laptop were themselves evidence, the United States could retain them until her trial. *Id.* But, Ms. Barnett argues that the devices themselves are not evidence. *Id.* Rather, the data contained within them is evidence. *Id.* Ms. Barnett asks the Court to compare the retention of her laptop and cell phone to the seizure and search of her co-Defendant, Dr. Herrell's cell phone and Apple watch. *Id.* at 14–15. The Government seized

Dr. Herrell's devices on December 18, 2018, and returned them to him two days later. *Id.* at 15. Ms. Barnett asserts that the Government could have minimized any interference with her possessory interest in her devices by doing "the same with [her] cell phone and laptop."[13] *Id.*

The Court agrees with Judge Ingram for three reasons. First, Ms. Barnett's original premise that "the government unreasonably delayed obtaining a search warrant for these devices following their seizure" fails from the outset. [R. 263 at 1.] As discussed, the Government validly seized the devices under the Spring Water Lane Warrant. The Fourth Amendment did not require Agent Sullivan to obtain the second warrant to search the iPhone and laptop. *See Evers*, 669 F.3d at 652 (quoting *Richards*, 659 F.3d at 539 n.10) ("[A] second warrant to search a properly seized computer is not necessary 'where the evidence obtained in the search did not exceed the probable cause articulated in the original warrant.'").

Second, Ms. Barnett's contention that "[t]he government did not have a legitimate interest in holding Ms. Barnett's cell phone and laptop as evidence" misconstrues the circumstances of its retention of her iPhone. [R. 417 at 14.] As Ms. Barnett points out, authorities took the phone to examine evidence within it, not to use the phone as physical evidence. And, as Judge Ingram explained, caselaw on retention of electronic containers of data generally permits large delays between seizure pursuant to a warrant and subsequent review of the computer's contents. Ms. Barnett repeats her mistake of relying on cases involving warrantless seizure. *See United States v. Pratt*, 915 F.3d 266, 270 (4th Cir. 2019)) (warrantless seizure of phone and thirty-one-day delay in obtaining a search warrant). [14] This is likely

---

[13] In her objection, Ms. Barnett references an argument that she makes in another motion regarding the Government's retention of personal as well as EHC related electronic data "without review any review whatsoever." [R. 417 at 15.] The Court understands Ms. Barnett to reference her motion filed at [R. 264]. While the Court addresses some matters from that motion in this order, the Court responds to Ms. Barnett's assertions regarding review protocols in a separate order.

[14] The portion of *United States v. Sparks* to which Ms. Barnett cites holds that a defendant lacked standing to contest a delay in seeking a search warrant for a cellphone because he had abandoned the phone. *United States v. Sparks*,

because the Sixth Circuit has expressly validated warrants that authorize the seizure of computer equipment for subsequent off-site review. *Evers*, 669 F.3d at 653. The Spring Water Lane warrant is the albatross that prevents Ms. Barnett's arguments from taking flight. Because the warrant justified the government's interference with her possessory interest in the phone, there is no unreasonable delay analysis to be had.

Third, Ms. Barnett does not point to a case that considered a disparity between the amount of time that authorities retained one defendant's devices compared to another. Instead, Ms. Barnett concludes that "[b]alancing all the factors together . . . these delays violated Ms. Barnett's Fourth Amendment rights . . . ." *Id.* Unfortunately, the Court is unclear as to which factors Ms. Barnett would like it to balance. She provided no citation to a balancing test that courts use, and the Court is not aware of any such test. Because this Court is not required to bolster Ms. Barnett's arguments with citations to authority, she has not sufficiently developed her contention to succeed. *Cf. United States v. Hurley*, 278 F. App'x 574, 577 (6th Cir. 2008) (citation to one case without further development is insufficient for appellate review).

For all these reasons, the Court overrules Ms. Barnett and Dr. Taylor's objections to Judge Ingram's recommended dispositions and adopts them as the opinion of the Court.

### III

Because the Spring Water Lane warrant allowed the Government to seize Ms. Barnett's laptop, her iPhone, and Dr. Taylor's computer, there is no violation of their Fourth Amendment rights. Under these circumstances, suppression of the data derived from the devices is inappropriate.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

---

806 F.3d 1325, 1340–42 (11th Cir. 2015). The Court assumes Ms. Barnett does not contest her own standing. This case has no other bearing on the present matter.

1. Defendant Lori Barnett's Objections **[R. 417]** are **OVERRULED**,

2. Judge Ingram's Report and Recommendation **[R. 384]** is **ADOPTED** as and for the opinion of the Court, and;

3. Defendant Lori Barnett's Motion to Suppress **[R. 263]** is **DENIED**.

4. Defendant Lori Barnett's Objections **[R. 460]** are **OVERRULED** to the extent that they are inconsistent with this Order,

5. The portion of Part IV of Judge Ingram's Report and Recommendation that discusses the Spring Water Lane Warrant **[R. 384 at 12–15]** is **ADOPTED** as and for the opinion of the Court, and;

6. Defendants Robert Taylor and Lori Barnett's Motion to Suppress **[R. 264]** is **DENIED IN PART**.


This the 10th day of November 2022.


Gregory F. Van Tatenhove
United States District Judge